CLARY'S HEIRS
*vs*
MARSHALL'S
HEIRS.

---

CHANCERY.

## Clary's Heirs *vs* Marshall's Heirs, &c.

ERROR TO THE FLEMING CIRCUIT.

Case 66.

*Statute of Frauds. Parties and Privies. Bills of Revivor.*

April 11.

CHIEF JUSTICE EWING delivered the opinion of the Court.—Judge Marshall did not sit in this case.

The case stated.

IN 1809, William Marshall, of Virginia, sold or exchanged to James Edmondson, of the same state, 5000 acres of land, out of a large tract of upwards of 13,000 acres, lying in Kentucky, which he held in conjunction with Charles Marshall, and gave his bond to convey, with a warranty and stipulation to refund twenty shillings per acre, with interest, in case any was lost. In the fall of 1809, Edmondson, with his family, removed to Kentucky, and by the direction of A. K. Marshall, the agent of William Marshall, he and his son-in-law, Benjamin Mosby, settled on the land, each purchasing out the im-

provements of settlers, at the places where they severally located.

Early in 1810, under the direction of A. K. Marshall, the agent, 1000 acres was divided and allotted by Commissioners, to Edmondson, as a part of his purchase, embracing his and Mosby's settlement, and 1000 acres, with £60 to be paid by Edmondson, as an equivalent portion, was allotted to Charles Marshall. The £60 was paid. Mosby under some contract with Edmondson, claimed 500 of the 1000 allotted to the latter, covering his settlement, and in the allotment the 500 acres was marked off to him. Mosby having erected a distillery and horse mill, and made other valuable improvements, in 1812, by the knowledge, and probably, by the consent of his father-in-law, sold his 500 acres to Anderson and Payne, for 15,000 gallons of whiskey, to be paid in annual instalments, and executed his bond to convey 150 acres to the former, and 358 to the latter, there being 8 acres surplus. A note for one of the instalments having been assigned to Wallace, he recovered a judgment thereon, which was injoined by Anderson and Payne, in a bill filed against Edmondson, the heirs of Mosby, he having died, and others, alledging a want of title in Mosby, and an inability to convey, and praying a conveyance, if to be had, if not, a rescission. In the mean time, Edmondson filed his bill against the heirs of William Marshall, he having died, for a title, and in 1817, obtained a decree against them as infant non-residents, for a conveyance of the moiety of the whole tract, embracing upwards of 500 acres more than his purchase, and a conveyance was accordingly made by a commissioner.

Immediately on the receipt of this conveyance, Edmondson executed to Anderson and Payne each, deeds for their respective parts of the land purchased by them from Mosby. This conveyance was made under an agreement with Anderson and Payne, containing stipulations, as to the payments to Edmondson, and the release of Mosby's administrators and heirs from responsibility on his bond to them, and a recital that Mosby had no title; but the conveyance was evidently superinduced by the equity or claim held by Mosby on Edmondson for a title.

Payne afterwards sold his 358 acres of land to Daniel Clary, and subsequently, in 1820, conveyed to his heirs, he having died. Anderson and Payne, under their purchase from Mosby, and Clary under his purchase from them, were let into the immediate possession, and each continued to extend the improvements, all under the eye of Edmondson, and remained in possession until Clary's heirs were turned out in 1836, by ejectment, instituted by the present defendants in error. The title under which they ousted Clary's heirs, accrued to them in the follow. ing manner. In 1826, they filed a bill of revivor to reverse the decree obtained by Edmondson against them for errors apparent on the face of the same, and succeeded in doing so, which decree was affirmed by this Court, (6 *J. J. Marshall*, 448.) Neither Mosby's heirs nor Anderson and Payne, nor Clary's heirs, were parties to this proceeding. The decree was revived and reversed for the excess over 5000 acres conveyed to Edmondson, and in carrying out the decree for reversal the commissioner allotted the surplus to Marshall's heirs, out of the very land which had been allotted to Edmondson and Mosby, in the allotment of the 1000 acres set apart to the former, in the aforesaid division, and upon which they had set. tled and made valuable improvements, and upon a part of which Clary's heirs were then residing. Marshall in his lifetime, visited Kentucky, saw the land that had been allotted to Edmondson, and approved the allotment, and after the division of the large tract between him and Charles Marshall, executed a power of attorney, authorising A. K. Marshall to convey the 5000 acres to Edmond. son, embracing, as we understand it, the 1000 acres al. lotted to him under his previous letter authorizing the allotment and settlement of Edmondson under his purchase. Clary's heirs upon being dispossessed, filed the bill in this case against Marshall's heirs, Edmondson and Mosby's heirs setting up their equitable right to the 358 acres sold to their ancestor by Payne. Their bill was dismissed by the Circuit Court, and they have brought the case to this court.

This is a clear case of equitable right in favor of Clary's heirs. And were it not for the numerous decisions of

this court, bearing incidentally or collaterally, upon the questions involved in this, but upon a partial or imperfect preparation of the cases, in most instances, we should have had no difficulty in coming to that conclusion.

That Mosby had a contract, parol or written, with Edmondson for 500 acres of land, embracing the land in contest, cannot be doubted. And it is questionable, from the facts in this record, whether the court ought not to presume a valid written contract for a conveyance. It is certain that the 500 acres was laid off to Mosby; that he purchased out the improvements of the settlers; that he took possesson and went on to erect lasting and valuable improvements on the land, claiming it as his own; that he sold out to Payne and Anderson, giving his bond for a conveyance, and taking their notes for the consideration, a large amount, the place being much enhanced in value by the improvements made on it; that Anderson and Payne took immediate possession under their purchase, going on still to extend the improvements, and all these things were done under the eye and with the presumed acquiescence of Edmondson.

From these facts, and as the means of *preventing a gross fraud* upon the purchasers from Mosby, it would not seem to be a great stretch of presumption to infer that Mosby held a valid and binding contract upon Edmondson for a title. But waiving this ground of equity, that there was at least a parol contract for a conveyance, cannot be doubted. It has been repeatedly determined by this court, that a parol contract for the sale or lease of land for a longer term than a year is not *void*. The statute withholds the right of action to enforce such a contract, but allows to it operative effect as a shield of defence, and if subsequently perfected by deed, such deed will have relation back to the origin of the parol contract, so as to overreach an intermediate executory sale to a stranger.

The vendor may avoid it by pleading or relying upon the statute, yet he is left at liberty to waive his right to the defence and consummate the contract, and cannot be deprived of his election to do so by a stranger. Though a vendor is not *legally* bound to fulfil his contract by a

CLARY'S HEIRS
vs
MARSHALL'S HEIRS.

A parol contract for the sale of land or for a lease for a longer term than one year is not void, but valid for many purposes, and a conveyance in compliance with such contract, will relate back to its date, and overreach an intermediate sale.

A vendor may, by pleading the statute of frauds, avoid a parol contract for the sale of land, or waive it, and consummate his

CLARY'S HEIRS
*vs*
MARSHALL'S
HEIRS.
───────────
contract, and
cannot be de-
prived of his
right to do so by
a stranger.

conveyance, yet a *moral duty* rests upon him to convey, and a *moral right* in the vendee to ask a conveyance, and if the former chooses to waive his *legal* right, in obedience to the dictates of his moral duty, by conveying or furnishing *written* evidence of his obligation to convey, a stranger to the contract has no right to complain, nor to preclude him from this discharge of his moral duty, in whole or in part, upon the terms of the original parol contract, or upon terms which he may choose to exact, and which the vendee or sub-purchaser may be willing to concede.

Applying these principles to the case before us, Mosby holding a parol contract with Edmondson, sold to Anderson and Payne; they had paid a part of the consideration to Mosby, who had died, and a judgment having been recovered against them for another instalment, by an assignee of the note, they had enjoined its payment, but were pressing Edmondson and Mosby's heirs for a title, if to be had, and if not, for a rescission of the contract, and a restitution of the consideration which had been paid. Edmondson had procured no legal title from Marshall's heirs, but immediately on obtaining a title under a decree of court, which at the time was deemed valid, he executed deeds to Payne and Anderson for precisely the respective parcels to which each were entitled under the purchase from Mosby. It is obvious to us that these deeds were based upon and superinduced by the equitable or moral claim which they held upon Edmondson, by and through their purchase from Mosby, and was intended to quiet the claim by perfecting their title to the land purchased. It is true that the residue of the consideration that had not been paid to Mosby, or an agreed sum in lieu of the residue, was by the terms agreed on, to be paid to Edmondson, but he exacted a bond from Payne and Anderson, in which, they are made to acknowledge, that Mosby had no title, contained stipulations that they should take no recourse against the administrator or heirs of Mosby, for the amount paid, nor persue them upon their bond for a title.

The acknowledgment that Mosby had no legal title, was true, but he may have held an equitable claim upon

Edmondson for a title, who held an equity under Marshall, and the acknowledgment does not necessarily controvert this fact, and if it did, it does not repudiate or controvert the moral right which Payne and Anderson had to ask a conveyanc under their purchasee from Mosby, nor the moral duty which rested upon him to convey, or intimate that the conveyances were not made in consequence thereof. The latter stipulations of the bond indicate an intention to affirm the contract with Mosby, and carry out and consummate his contract with Anderson and Payne, rather than to controvert or repudiate either, upon terms, it is true, which would enable Edmondson to control the sum due of the consideration, perhaps for the benefit of his widowed daughter, Mosby's late wife, and upon terms of payment more advantageous to Payne and Anderson. But the exaction of these terms on the one side, and the concession of them on the other, do not essentially change the case, or contravene the conclusion, that the chief object, motive and inducement to the conveyance, was the moral duty which rested upon Edmondson to convey by reason of his contract with Mosby, and the moral right of Anderson and Payne to ask a conveyance by reason of their purchase from Mosby, and the intention, on terms favorable to both parties, to carry out and consummate this moral and just claim. The contract of Mosby being the moving inducement to the settlement, and conveyance of Edmondson to Payne, though that conveyance, as was decided by this Court, is inoperative against Marshall's heirs, so far as it passes the *legal* title, or as we may add, *originates* and passes a new *equity*, being made *pendente lite*, and subject to the reversal of the decree obtained by Edmondson, on the bill of revivor, (4 *Dana*, 97;) yet it is good and valid against Edmondson who made it, and has relation back to the origin of Mosby's imperfect equity, arising under his parol contract, and renders it perfect, by affording written evidence, which precludes Edmondson from avoiding it, by relying upon the statute of frauds and perjuries. And Marshall's heirs, who were strangers to the contract, had no right to avoid it by pleading the statute, if Edmondson chose to waive his right to do so, nor

CLARY'S HEIRS *vs* MARSHALL'S HEIRS.

could their rights be affected or altered whether the contract was in writing or in parol. If they were bound to convey to Edmondson or to Mosby, or any other claiming Edmondson's equity, their obligation to convey is not changed, lessened, or enlarged by the fact that the contract by which Edmondson parted with the equity, was in parol or in writing. Nor can they complain, that Edmondson, in the discharge of a moral duty, either before the institution of his suit for a title, or during its pendency or after its termination, chose to waive his right to rely on the statute, by furnishing to his vendee or sub-vendee, written evidence of a pre-existant just claim. Had Anderson and Payne petitioned the court to be made defendants in the suit of Edmondson against Marshall's heirs for a title, by way of asserting and protecting their equity as purchasers from Mosby, who claimed under Edmondson, and being admitted had made their answer a cross bill against Edmondson and Marshall's heirs, and Edmondson had answered, admitting his contract with Mosby, and refusing to avoid it by relying on the statute, Marshall's heirs would have had no right to avoid it by pleading the statute, but if Edmondson had equity against Marshall's heirs, they would have been equitably bound and decreed to convey to Payne and Anderson, notwithstanding the contract with Mosby was in parol. And, if after the decree in favor of Edmondson, for a title, embracing Payne and Anderson's purchase, and upon the bill of revivor, had Clary's heirs been made parties, and Edmondson's contract with Mosby had still remained in parol, but had been admitted by Edmondson, and the statute waived, Marshall's heirs would still have had no right to respond or plead the statue in avoidance of the contract.

And if they had not, neither have they, after Edmondson has waived the benefit of the statute, by executing written deeds, a right to defeat the contract by pleading the statute, or relying upon its parol character. They are strangers to the contract, and have no right to defeat it against the *will* of the parties to the same. The statute was made for the benefit and protection of the parties to

The statute of frauds was made for the benefit of the parties to parol contracts for land or those claiming ander them, and not for the benefit of strangers. thereto.

the contract, and those claiming under them, and not for the benefit of strangers to the same.

If Marshall's heirs had other equitable grounds of defence under their contract with Edmondson to defeat his recovery of the land embraced in Mosby's purchase, it is true that Mosby' equity under Edmondson, and consequently the derivative equity of Clary's heirs, would fail with the failure of Edmondson; but it would equally fail though the contract of Mosby had been in writing; so that it matters not to Marshall's heirs, whether Mosby's contract was or was not in writing, so far as their rights under their contract with Edmondson is concerned.

It is true that a decree has been rendered on the bill of review against Edmondson, not only reversing the decree which had been obtained for a title against Marshall's heirs, on account of the surplus embraced in the conveyance, but also allotting the surplus so as to embrace Clary's purchase, and a release or re-conveyance, directed and made to Marshall's heirs, of the same; and this decree being unreversed, is conclusive against Edmondson. But Clary's heirs were no parties to this proceeding, and cannot be barred of their equity, or precluded from their right to assert it, and the more especially as Marshall's heirs, unquestionably had constructive if not actual notice of its subsistance long before and during the pendency of their suit. They were in possession, cultivating, using and claiming the land as their own, under a deed executed to them by Anderson and Payne who held under a deed from Edmondson, and both deeds were duly recorded. These purchases were known in the neighborhood, and had been frequently the subject of litigation. The possession alone, was sufficient to put them upon enquiry, and that enquiry must have lead to the ascertainment of their claim.

*A vendee obtained title by suit in Chancery and made a conveyance in accordance with a previous parol contract of sale of part of the land, on bill of review, the decree being for too much land, was reversed, and a decree rendered for part only of the land, first decreed to the first vendee, leaving out the part by him conveyed under his parol contract, the vendee under the parol contract being in possession during the pendency of both bills, held that his original equity was not affected by the decree on the bill of review, he being no party to the suit.*

Indeed it is questionable whether *notice to the heirs of Marshall*, constructive or actual, of their outstanding equity, was at all necessary to bar them of their right to assert it, if they were not made *parties* to the suit.

It has been frequently determined by the English courts, as well as by the courts in New York, and the like doctrine has been settled by this court, that a subsequent

A junior mort-
gagee not sued,
has a right to re-
deem, although
a foreclosure has
been had by the
senior mortga-
gee.

mortgagee or incumbrancer who was not made a party to a suit to foreclose, brought by a senior mortgagee, had a right to assert his equity, and redeem, notwithstanding a decree of foreclosure had been obtained by the senior mortgagee, *without notice*, of his outstanding equity. And in the case of *Hains* vs *Beach*, (3 *John. Ch. Rep.* 461,) Chancellor Kent determined that a subsequent incumbrancer, who was not made a party, had a right to redeem, even against a *purchaser without notice*. And this court, in the case of *Cooper et al.* vs *Martin et al.* (1 *Dana*, 23,) pursuing the lead of the learned Chancellor, carried the doctrine the same length. But this court in the case of *Bank of the United States* vs *Carroll and others*, (4 *B. Monroe*, 49,) intimated an opinion, that there was a distinction between a mere foreclosure and a foreclosure and sale; and while they conceded that an outstanding junior incumbrancer was not barred by a decree of mere foreclosure, if he was not made a party, but might assert his dormant equity and redeem, though the senior incumbrancer had *no notice* of his equity, they intimated that such a latent equity holder, not being made a party, should not be allowed to set up his dormant equity, and redeem against an innocent purchaser under a decree of *foreclosure and sale*.

But conceding the right to redeem in the case of a decree for a *mere foreclosure* without notice, the rights and condition of the parties are not essentially different in that case and in this, and the rules of equity applicable to both it would seem, ought not to be different. In that case the proceeding and decree are against the mortgagor, the original party to the contract of mortgage, in this the proceeding and decree, was against Edmonson, the original party to the contract of sale. In that the proceeding is against the mortgagor as the presumed and only known holder of the right to redeem. In this the proceeding is against Edmondson, the presumed, and as it is insisted, the only known holder of the legal title or equity. But in the former case the mortgagor had parted with his equity to redeem, by mortgaging it to another. So in this Edmondson had parted with his equity to Clay. In the former case the senior mortgagee is secured and quieted

by the decree, in the legal title, which he before held freed from the right of redemption by the mortgagor. In this the Marshalls, by the decree, are reinvested with the legal title to the surplus to the same extent as they before held it, and no further, and Edmondson barred of all right to question it. If in the former case, the outstanding dormant equity of the junior mortgagee, which was unknown at the time of the decree, is not barred but may be asserted; so it would seem that the equity of Clary's heirs, though it was unknown to Marshall's heirs at the time of the decree, ought not to be barred, nor Clary's heirs precluded from setting up and asserting it. Although for the benefit of trade and the security of innocent purchasers, an outstanding latent equity may be barred by a voluntary sale and conveyance for a valuable consideration, Courts of Equity, in the general, will not, by decree, bar such an equity without giving the holder the opportunity to be heard. Its decrees in the general, are binding only upon those who has been heard and their privies. But it is not necessary, nor do we predicate the right of Clary's heirs to assert their equity upon this latter ground, as it is apparent that Marshall's heirs or their agent had constructive, if not actual notice of their claim.

It being established that Clary's heirs have a right to assert under Mosby's contract with Edmondson, all the equity which the latter derived by his purchase from Marshall, and that they have not been barred or precluded of that right, by the proceedings and decree on the bill of review against Edmondson, the question still remains to be decided, have they, by the facts exhibited in this record, established an equity to have the specific land embraced by their purchase conveyed to them by Marshall's heirs? And a glance at the facts already stated, can lead to no other conclusion than that they have.

The allotment and settlement of Edmondson on the 1000 acres embracing the land in contest, by the authorized agent of Wm. Marshall, the lasting and valuable improvements made on the same by both Edmondson and Mosby, the payment of the difference by Edmondson to C. Marshall, in the value of the land, allotted over the value of the 1000 allotted to C. Marshall, the subsequent

CLARY'S HEIRS
*vs*
MARSHALL'S
HEIRS.

approval of the allottment by Wm. Marshall and authori-
ty given to A. K. Marshall to convey the 5000 acres sold,
regarding the allottment and settlement before made un-
der the authority of his letter, as we understand it, the
acquiesence in the same down to his death, the cotem-
poraneous construction and action of all the parties con-
cerned under the contract of sale as embracing the speci-
fic land in contest, connected with the fact that only about
seventeen or eighteen hundred acres of Edmondson's
purchase, embracing the 1000 allotted, was at the time
of the purchase, worth twenty shillings per acre, (the
price it is presumed per acre, that the whole purchase
was estimated at, from the fact that the covenant of sale
stipulated that amount per acre to be refunded in case of
loss,) and a large portion of the residue was then worth
only from twenty five to fifty cents per acre, being in the
hills, and connected with the further fact appearing in
this record, that Edmondson was dissatisfied with his
purchase and threatened suit immediately, on discover-
ing the quantity that embraced the hills, and was only
quieted by the promise of A. K. Marshall, the agent, that
another tract, then in litigation, should be conveyed in
case it was gained, to make up for the deficiency in the
quality; all these concurring facts address themselves to
the conscience of the Chancellor, in language not to be
resisted, requiring him, in ordering a conveyance to Ed-
mondson, at least to have required that the 1000 acres
embracing the land in contest, should have been convey-
ed, and we can account for the omission and the allott-
ment of the same to Marshall's heirs in the surplus set
apart to them, upon no other principle than a want of
preparation and proper defence on the part of Edmond-
son, which is not binding on Clary's heirs.

It was it is true, said by this Court, in the case of *Ed-
mondson* vs *Marshall's heirs*, (6 *J. J. Marsh*. 450,) that
"the answer of Edmondson bringing forward matters of
fact, was properly rejected by the Court," the bill being a
bill to review and reverse the decree for errors apparent on
the face of the record only. This may be true as to the
mere reversal only, but so far as the proceeding sought a
location of the 5000 acres sold, or a location and re-con-

veyance of the surplus, as those matters were not before litigated, we cannot perceive the propriety of prohibiting even Edmondson from presenting such facts either in his answer or in objections to the report, as bore upon that matter; but Clary's heirs, who were not parties and are, therefore, in no way responsible for the errors in the original decree, if allowed to appear at all, should surely be permitted to present and rely upon any matters of fact or law which would tend to show that their purchase was embraced in Edmondson's purchase from Marshall, and ought not, in equity or good conscience, to be set apart in the surplus to Marshall's heirs.

It is also strenuously urged that Marshall's heirs have satisfied the bond of their ancestor by conveying the full quantity of his sale. If the bond has been satisfied by withholding that which should have been conveyed, and to which the original parties looked as a prominent inducement to the purchase, and conveying that which embraced the hills, and was not at the time, worth one fourth of the estimated value fixed upon the land sold, and which, as is most probable, was not at all in the contemplation of the parties to the contract at the time of the sale, then they have satisfied their bond. If they were bound in good conscience, to embrace in the conveyance the 1000 acres allotted as above shown, then they have not satisfied their bond, and Clary's heirs being no parties to the original proceeding or bill of review, are in no way responsible for the errors in either, and cannot be concluded by them. It may be that Marshall's heirs, upon conveying to Clary's heirs, may have the right, by proper proceedings, to be restored to the land which they ought not to have conveyed; but whether they can or cannot, they have no right to escape from conveying that which they were equitably bound to convey. The whole 1000 upon which Edmondson was settled as a part of his purchase, seems by the proof in this case, to have been set apart to Marshall's heirs, in the surplus. According to the principle adopted in the location of the surplus, had there been a few hundred acres more of surplus in the large tract, Edmondson and those claiming under him, would have been pushed upon the hills and poor

land, and the entire parcel of the land that was worth twenty shillings per acre, retained by the Marshalls in the surplus. This, it seems to us, instead of being equity, would be the grossest iniquity and perversion of the purposes and intentions of the original contracting parties. Upon the whole, we are satisfied that Clary's heirs are entitled to a decree for the land in contest, and are, also, entitled to reasonable rents for the place since they have been divested of the possession.

It is therefore, the opinion of this Court, that the decree of the Circuit Court be reversed and cause remanded, that an estimate may be made of the rents from the time that Clary's heirs were ousted of the possession by the ejectment, and a decree rendered in their favor for the same, against Marshall's heirs or Martin P. Marshall, since he has been let into the possession under his purchase from the heirs of Marshall, and also a decree for a conveyance of the land claimed by them, with costs, and they are entitled to their costs in this Court.

*Hord* for plaintiff: *McClung and Beatty* for defendants.