Cool *et al. v.* The Peters Box and Lumber Company.

———◆———

No. 9056.

COOL ET AL. *v.* THE PETERS BOX AND LUMBER COMPANY.

GROWING TREES.—*Parol Contract of Sale.—License.—Effect of Severance.—*A parol contract for the sale of growing trees or standing timber is merely a license to the vendee to enter upon the vendor's land for the purpose of severing and removing such trees and timber; and if such license be not revoked before the trees are severed, the title thereto will vest in the vendee, and thereafter the license will be coupled with an interest and irrevocable.

SAME.—*Statute of Frauds.—Personal Defence.—Stranger to Contract.—*A con-

| 87 | 531 |
| 131 | 228 |
| 87 | 531 |
| 137 | 620 |
| 87 | 531 |
| 152 | 432 |
| 87 | 531 |
| 169 | 551 |

Cool *et al. v.* The Peters Box and Lumber Company.

tract for the sale of growing trees or standing timber is a contract for the sale of an interest in land, and, if not in writing, under section 4904, R. S. 1881, one party can not enforce such contract against the other party; but the statute, as a defence, is strictly personal to the parties, and can not be made available by a stranger to the contract.

SAME.—*Judgment Against Several Parties.—Available Error.—Supreme Court.—* Where it appears that a judgment against several parties is erroneous as to one of them, who has not appealed therefrom, such error will not be available to the other parties, and the Supreme Court will not reverse the judgment on account of such error, as to any of the parties.

From the Superior Court of Allen County.

*J. Morris, W. L. Penfield* and *C. E. Emanuel,* for appellants. *A. Zollars* and *J. E. Graham,* for appellee.

HOWK, J.—This was a suit by the appellee, a corporation under the laws of this State, against the appellants, in a complaint of three paragraphs. The cause was put at issue and tried by the court, and, at the appellants' request, the court made a special finding of the facts, and stated its conclusions of law thereon, in favor of the appellee. Over the appellants' exceptions to the conclusions of law, the court rendered judgment thereon against them, in appellee's favor, for $150 and the costs of suit.

The appellants have assigned a number of supposed errors, but their counsel have not discussed them *seriatim,* and we need not set them out. The grounds relied upon by counsel for the reversal of the judgment below are presented fairly and favorably for the appellants by the special finding of the facts, and the conclusions of law thereon. The substance of the appellee's complaint was, that the appellants and other named defendants, without leave and wrongfully, cut down, took and carried away certain black walnut trees and one white walnut tree, the property of the appellee, of the value of $500, on certain lands in Allen county, to appellee's damage, etc. The special finding of facts and conclusions of law were, in substance, as follows:

"1st. On the 27th day of August, 1877, one Stevenson bought of Henry Teeple and the heirs of John Grush, de-

Cool *et al. v.* The Peters Box and Lumber Company.

ceased, by parol, without any contract or deed in writing, the trees mentioned in the complaint, which were then standing timber growing on the lands of said Teeple and the Grush heirs, and agreed to pay therefor the sum of $50, he to have the right to cut and remove said trees within ten days thereafter if he paid the purchase-money therefor within that time. Stevenson sold his interest in said trees to the plaintiff for $25, and the plaintiff's agent and manager paid the said Teeple and the Grush heirs the money for said timber which Stevenson had agreed to pay, while it was standing on said lands; and Teeple and the Grush heirs agreed with the plaintiff that it should have the absolute property and ownership in said trees, and that the plaintiff should have the right, at any time thereafter, to enter upon said lands and cut and remove said trees. Henry Teeple, who is now dead, and his heirs and the heirs of John Grush, from the date of the sale of said trees to the present time, have been the owners and in possession of said lands, and the plaintiff never has had any title to or interest in said lands, except the right that said parol contract gave it to cut and remove the trees it so purchased.

"2d. The plaintiff never took possession of said timber in any way, or cut the same, or did any act in relation thereto, except to claim that it had bought the trees and owned them; but the plaintiff at all times, after its purchase and payment therefor, intended to cut and remove the trees in pursuance of said contract, and to bring this suit against the defendants for the conversion of said timber, from the time the defendants cut down and removed said trees, as hereinafter stated.

"3d. In the year 1878, being after the purchase of said timber by the plaintiff, and the payment therefor, and the granting of the license to plaintiff to enter upon the land in question and cut said trees, the defendant Isaac N. Cool commenced an action against said Stevenson before a justice of the peace of Cedar Creek township, in Allen county, being the township and county in which said lands and trees were situated, and caused a writ of attachment to be issued

by said justice against the property of said Stevenson on the ground that he was a non-resident of Indiana; which writ of attachment was placed in the hands of the defendant Scott Lindsey, as constable, who levied the same on said standing trees as the property of said Stevenson. Such proceedings were had in said attachment case that a judgment was rendered against the defendant Stevenson by default, and the trees were ordered to be sold to satisfy said Cool's claim and costs; and an order of sale against said trees was issued to the defendant John D. Wheelock, as constable, and the successor in office of the defendant Lindsey, who levied the writ of attachment. Said Wheelock advertised and sold said trees at constable's sale, while they were yet standing and growing on said lands, to the defendant Isaac N. Cool, who bid in said trees for the amount of his debt and costs.

"4th. The defendant Cool afterward sold said trees as standing timber growing on said lands to his co-defendant Martin L. Duck herein. Although said Duck agreed with said Cool, at the time he purchased said timber, that he would assume all responsibility in cutting and removing the trees, yet said Cool informed said Duck, at the time he purchased said trees, that, if he would forthwith cut and remove them, there would probably be no difficulty in the matter, and he countenanced, counseled and advised the cutting and removing and conversion of said trees, timber and lumber, by said Duck, Houck and Cook, at the time he sold them to said Duck, but at no other time thereafter.

"5th. Afterwards, in the year 1878, and after the purchase of, and payment for, said trees by the plaintiff, and the granting of such license by the owners to the plaintiff to enter upon said lands and cut down said trees at any time thereafter, the defendants Duck, Houck and Cook cut down said trees and converted the same into logs and lumber, and sold and disposed of the same, and said Duck received the proceeds thereof.

"6th. None of the defendants herein ever had any leave,

license or authority from the said Henry Teeple or his heirs, or the said Grush heirs, or the plaintiff, to cut, remove, or in any way interfere with said trees, or the timber or proceeds therefrom.

" 7th. Neither said Henry Teeple or his heirs, nor said Grush heirs, ever annulled or revoked said contract or license to plaintiff to cut said trees, or paid back the money they received for it, but are still willing to abide, and do abide, by said said contract of sale in all respects as the same was made.

" 8th. At the time of the commencement of this action the defendants Duck, Cool and Houck were and still are residents of DeKalb county, Indiana, and the other defendants were and still are residents of Allen county, Indiana; and none of the defendants, residents of Allen county, were joined with the resident defendants of DeKalb county, merely for the purpose of giving this court jurisdiction of the parties resident in DeKalb county, but the plaintiff joined them as parties, believing in good faith they were legally liable, and that it had a good cause of action against them.

" 9th. The trees, timber, logs and lumber, in the several paragraphs of complaint mentioned, are those herein set forth, and none others; and none of the defendants did any act or acts, in relation to the trees, timber, logs and lumber, other than as herein set forth; and the reasonable market value of said trees, timber, logs and lumber, at the time of their conversion and at any other time from thence hitherto up to the present, is $150."

Upon the foregoing facts the court stated its conclusions of law as follows:

" 1st. The plaintiff is entitled to recover from the defendants Isaac N. Cool, Martin L. Duck, Josiah Houck and Eugene Cook, the value of the trees, logs, timber and lumber so cut down and converted by them, the said Duck, Houck and Cook, by and with the advice, counsel and encourage-

ment of the said Cool as aforesaid, together with its reasonable costs.

"2d. The defendants Lindsey and Wheelock are not liable to the plaintiff, and ought to recover from the plaintiff their costs and charges herein laid out and expended."

The first point made by the appellants' counsel in argument is this: "A parol contract, for the sale of standing timber, is merely a license. It does not pass any title and can not be made available in any way as a contract." In support of this point, counsel cite the case of *Owens* v. *Lewis*, 46 Ind. 488 (15 Am. R. 295). In that case it was held, and correctly so we think, that a contract for the sale of growing trees is a contract for the sale of an interest in land, and must be in writing in order to render it binding on either party to the contract. Doubtless that is the law, but we do not think it is applicable to the case in hand. Such a contract is not invalid or void; but in section 4904, R. S. 1881, in force at the time, it is declared that no action shall be brought upon any such contract. One party can not maintain an action to enforce the contract against the other party thereto; but it does not follow that the contract, or property rights acquired thereunder, may not be enforced against a stranger to such contract. Conceding that the appellee, as between itself and the owners of the lands, by its purchase of the trees growing thereon, acquired merely a license to enter upon the lands and sever the trees therefrom, yet this license could be revoked or countermanded only by the owner of the lands, and could not be defeated by the acts of mere strangers to the title. Thus, in *Owens* v. *Lewis, supra,* it is said: "A parol agreement for the sale of growing trees, the trees to be severed and taken from the land by the vendee, as in this case, will amount to a license for the vendee to enter upon the vendor's land, for the purpose of making such severance, and if such license is not revoked before the trees are severed, the title to the trees will vest in the vendee, and the license after severance will become coupled with an in-

terest and irrevocable, and the vendee will have a perfect right to enter and remove the trees thus severed."

In the case at bar, the court specially found, as we have seen, that the owners of the lands had never revoked or countermanded the appellee's license to enter thereon and sever and remove the growing trees. When, therefore, by the acts of the appellants, the growing trees were severed from the lands, the title to such trees vested in the appellee, its license became coupled with an interest and irrevocable, and thereafter it could maintain an action for the wrongful conversion by the appellants of the logs, timber or lumber, the product of such trees.

The second point stated by the appellants' counsel is that "A parol license is not assignable, because it is founded in personal confidence." As a rule, this proposition is true. *Snowden* v. *Wilas,* 19 Ind. 10. But the point made is wholly inapplicable to the case in hand. The appellee bought of Stevenson and paid him for the right or privilege he had acquired from the owners of the lands, to cut and remove the standing trees, if he should pay for them within ten days. Stevenson never had a license to sever the trees from the lands, because he never paid the agreed price of the trees within the ten days, or at any other time; and, of course, he never assigned, or attempted to assign, to the appellee any such license. He had contracted for such a license, and agreed to pay therefor within ten days, and the appellee gave him a bonus for his contract. The appellee then paid the owners of the lands the price agreed upon with Stevenson for the growing trees; and they then agreed with appellee "that it should have the absolute property and ownership in said trees, and should have the right, at any time thereafter, to enter upon said lands and cut and remove said trees." This was a direct license to the appellee from the owners of the lands, and it differed widely from, and, in its terms, was much more liberal than, the limited license contracted for by Stevenson.

The third point relied upon by appellants' counsel is, in

substance, this: The contract between the appellee and the owners of the lands, in relation to the growing trees, under the provisions of section 4904, R. S. 1881, is absolutely void; and, therefore, it is claimed that the appellee can not maintain this action against the appellants, although they are strangers to the contract, trespassers and wrong-doers, for the wrongful conversion of the trees which the appellee had bought and paid for. In other words, the appellants seek to defeat the appellee's action by claiming as their defence that the appellee's contract with the owners of the lands was within the statute of frauds. The statute as a defence, however, is strictly personal to the parties to the contract, and, as such, can not be made available by a stranger to the contract. Thus, in *Morrison* v. *Collier*, 79 Ind. 417, speaking for the court, WOODS, J., said: "The parol contract is not void, and whether it shall stand depends on the choice of the parties. It is the personal privilege of a party, his privies or representatives, to abide by or repudiate his contract within the statute, and a mere stranger may not interfere to prevent the performance." So, in *Minns* v. *Morse*, 15 Ohio, 568, the Supreme Court of Ohio held that the statute of frauds "only forbids the maintenance of an action to enforce the parol contract. It does not purport that it shall be absolutely void. By implication it admits, that as between the parties, the parol contract may give rise to equities as binding upon the conscience as if the same were evidenced by writing."

So, also, the rule is well stated, in *Clary* v. *Marshall*, 5 B. Mon. 266, by the Supreme Court of Kentucky, as follows: "The vendor may avoid it" (the verbal contract), "by pleading or relying on the statute, yet he is left at liberty to waive his right to the defence and consummate the contract, and can not be deprived of his election to do so by a stranger. Though a vendor is not *legally* bound to fulfill his contract by a conveyance, yet a *moral duty* rests upon him to convey, and a *moral right* in the vendee to ask for a conveyance, and if the former choose to waive his *legal* right, in obedience to the

dictates of his moral duty, by conveying or furnishing *written* evidence of his obligation to convey, a stranger to the contract has no right to complain nor to preclude him from this discharge of his moral duty, in whole or in part, upon the terms of the original parol contract, or upon terms which he may choose to exact, and which the vendee or sub-purchaser may be willing to concede." Again, in Browne Stat. of Frauds, sec. 128, *et seq.*, the doctrine is recognized that when such a contract comes in question *inter alios*, or for any other purpose than that of recovery between the parties, it is to a great extent regarded as a subsisting valid contract. A third party can not invoke the application of the statute for his own benefit. It follows that the third point relied upon by appellants' counsel is not well taken and can not be sustained.

The fourth and last point insisted upon as ground for the reversal of the judgment is thus stated : " The case having been dismissed as to Houck, the court necessarily erred in its finding of facts, and in its conclusions of law, and also in rendering judgment." The only errors assigned in this court were assigned by and in the names of the appellants Martin L. Duck and Isaac N. Cool. Afterwards the affidavit of Cool was filed in this court, showing that Josiah Houck was a non-resident of this State, and that he had not appeared, and was not represented by any attorney in this action, in the court below. Proof was afterwards made that notice of the pendency of this appeal had been given Josiah Houck, by publication thereof in a weekly newspaper, printed and published in DeKalb county. But it does not appear that Josiah Houck has ever appeared in this case in this court, or that any errors have been assigned by him or by his counsel, upon the record of this cause. If he were here, complaining of the judgment rendered against him manifestly by an oversight, upon the grounds suggested by the counsel of Duck and Cool, it might well be that he would be entitled to a reversal of the judgment against himself. But, conceding the judgment against Houck to be erroneous, we are of the opinion that this error does not

authorize his co-defendants to ask for the reversal of the judgment against him, and certainly not as against themselves.

We have found no error in the record which authorizes or requires the reversal of the judgment.

The judgment is affirmed, with costs.

ZOLLARS, J., having been of counsel, took no part in the consideration or decision of this cause.