Common Pleas Court of Franklin County.

VOLUNTEERS OF AMERICA V. HARRY T. PAUL, ET AL.

Decided January 31, 1933.

*W. B. McLeskey,* for plaintiff.

*Williams, Williams, Klapp & Reynolds,* for defendants, *Dan Mullane, Jr.* and *Robert J. Slemons.*

RANDALL, J.

This cause is before the court upon the demurrer of plaintiff to the second defense of the answer.

The facts may be summarized as follows: On or about the 8th day of October, 1930, the defendants, Dan Mullane, Jr., and Robert J. Slemons recovered a judgment against the plaintiff herein in the Common Pleas Court of Mahoning county in the sum of $3,489.21. On the 15th day of May, 1931, said defendants caused an execution to be issued on said judgment to the defendant, Harry T. Paul, as Sheriff of Franklin county, whereupon on the 16th day of May, 1931, the Sheriff of this county made a levy upon said property of the plaintiff in the city of Columbus, Ohio. It appears that the deed conveying said property upon which the levy was made to the plaintiff herein was ab-

solute upon its face. It is alleged, however, that in fact plaintiff holds the legal title to said property in trust for the people of Columbus, Ohio, and that at the time of the execution and delivery of said deed and at all times since said time the plaintiff has declared itself to be a trustee of the legal title to said premises for the people of the city of Columbus. It is further alleged that the purchase price of said property was furnished by the people of the city of Columbus upon the condition that said premises should be used for the purpose of dispensing charity to the poor and unfortunate in the city of Columbus.

The petition further states that the plaintiff did not discover that levy had been made upon said premises until on or about the 1st day of March, 1932, whereupon it alleges that it demanded the defendants withdraw said levy and release said premises from the lien thereof, which they failed to do.

Plaintiff then alleges the defendant, Harry T. Paul, as Sheriff, is threatening to advertise said premises for sale for the purpose of satisfying said judgment and will do so unless restrained by this court. The petition further alleges that the plaintiff is without an adequate remedy at law.

The answer of the defendants, Dan Mullane, Jr., and Robert J. Slemons, after admitting certain facts, for its first defense sets up a general denial.

For a second defense said defendants say that the real estate in question was acquired by plaintiff on or about the 7th day of June, 1920, and that it stands upon the tax duplicate of Franklin county, Ohio, and upon the records in the Recorder's Office in Franklin county, Ohio, in the name of the plaintiff and that the plaintiff has a legal title thereto and that said property is the absolute property of the plaintiff corporation, and that at the time said property was acquired by said corporation it was not in writing specified that said property should be otherwise than the absolute property of said corporation and that the judgment of said answering defendants is a valid and subsisting lien upon said premises, and the same should be sold upon execution to satisfy judgment of the defendants.

This demurrer questions the sufficiency of said second defense to state a defense.

The defendants do not question the principle of law that a parole trust may be engrafted upon a deed absolute upon its face. They contend, however, that the rights of the parties are determined by Section 8623-112, General Code, which provides as follows:

"All property, real or personal, acquired by a corporation not for profit, by purchase, gift or otherwise, shall be the absolute property of such corporation, unless at the time of acquiring such property it be otherwise in writing specified."

The above section of the statute was enacted in the year 1927 as a part of the new Corporation Code. The property in question was acquired by the plaintiff herein on or about the 7th day of June, 1920.

The sufficiency of the second defense, therefore, depends upon a construction of Section 8623-112, General Code. This section in and of itself does not, in so many words, provide whether or not it applies to property acquired before its enactment.

Counsel for plaintiff contends, first, that this section was enacted for the purpose of regulating domestic corporations not for profit and that inasmuch as the plaintiff is a New York corporation and there are no statutes in the State of Ohio regulating foreign corporations not for profit operating in this state that it has no application to the facts of this case.

Secondly, that if plaintiff's contention is not well taken, the statute cannot apply in this case where an express trust is sought to be enforced nor where a resulting or constructive trust is involved.

Thirdly, plaintiff contends that the section has no application for the reason that plaintiff, as trustee, did not acquire the property, in the petition described, within the meaning of that term as contained in the statute.

Fourthly, plaintiff contends that the statute was never designed to operate except between two parties asserting an interest or ownership of the property in controversy and that it was not designed to aid an execution creditor in the satisfaction of a claim.

Fifthly, plaintiff contends that the statute cannot operate retrospectively unless the language thereof clearly indicates the contrary intention.

Sixthly, plaintiff claims that if the statute should be so construed as to justify a retroactive or retrospective interpretation it is unconstitutional as being in controvention of Section 28, Article 2 of the Constitution of Ohio which prevents the passage of retroactive legislation.

Counsel for defendants contend that notwithstanding the fact that the plaintiff is a New York corporation that this action relates to the character of title held by the plaintiff corporation in Ohio and that the law of Ohio applies to real estate held by such foreign corporations.

Second; Counsel for defendants contend that the rule that statutes are ordinarily to be given a prospective operation and that retroactive laws of certain character are prohibited by the Constitution of Ohio are subject to the exception as to statutes which are remedial in their nature. They claim that the statute in question is remedial and that it is nothing more nor less than a new section of the statute of frauds.

We have read with interest and care the helpful briefs of counsel sustaining their respective contentions and have reached the following conclusions: With respect to the first contention of the plaintiff we agree with defendants that the statute in question applies to foreign corporations doing business in this state even though there is no express provision contained therein to that effect.

As we see it, the principal and decisive question is whether or not the statute is remedial in its nature, and if construed as being remedial whether it applies in this case.

As a part of the same Act in which Section 8623-112, General Code, was enacted, Section 8623-136 was also enacted which provided as follows:

"This act shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed."

By express declaration of the Legislature, therefore, at

the time of the enactment of Section 8623-112 it was its intention not to deprive persons or corporations of vested rights held by them at that time nor to prevent them from asserting the same. If that statute were now in full force and effect, in our opinion, it is broad enough to fully determine the question at issue in this case. However, Section 8623-136 was modified by the Legislature in 1929 when the Corporation Code was reenacted by the substitution of the following section:

"If any provision of this act, or the application thereof to any person or circumstances, is held invalid, the remainder of the act and the application of such provision to other persons or circumstances, shall not be affected thereby."

Therefore, the only value of Section 8623-136 as enacted in the year 1927 is to aid the court in determining what the intention of the Legislature actually was when it enacted Section 8623-112. It seems clear to us that this saving clause, which was enacted at the same time as the statute which we are asked to construe, points to the intention of the Legislature to confine the operation of said Section prospectively and not retroactively.

Furthermore, it seems to us that the principles laid down in the case of *Kelly* v. *Kelso and Loomis,* 5 Ohio State 199, have a direct bearing upon the problem before us. We quote from the opinion of Judge Ranney as follows:

"Viewed in the light of the well settled rule, that statutes affecting substantial interests have only a prospective operation, unless the contrary intention clearly appears, whatever cases it may include, and whatever may be the extent, it speaks only for the future, and gives notice to those dealing with the masters of vessels, of the restricted liability imposed upon the owners. Upon any other construction, it takes away, arbitrarily, and without compensation, a part of the security upon which the defendants had a right to rely, and impairs the obligation of a contract lawfully made, and upon the faith of which they must be presumed to have parted with their property. Irrespective of all constitutional restraints, it is not difficult to see that such legislation is utterly inconsistent with that jealous regard for private rights, for which our institutions have been distinguished; and, in the absence of clear and unmistakable language, it ought never to be imputed to a legislative body."

The same principle is laid down in the case of *Bernier* v. *Becker,* 37 Ohio State, 72.

Testing the case at bar by the application of the principles laid down in the abive cases we ask, where does it clearly appear in Section 8623-112 that said statute was to have a retroactive operation, or, in other words, wherein does it appear in said section clearly that said statute was not to have only a prospective operation.

The statute, itself, in so many words, failed to reveal whether its operation is to be retroactive or only prospective. However the use of the word "shall" in the clause "shall be the absolute property of such corporation" denotes some degree of futurity.

Whether or not it appears in any degree from the exact language used that the statute was designed to operate prospectively only, there certainly is no basis for interpreting the exact language as indicating retroactive operation which must be the case in order to satisfy the principles laid down in the above mentioned cases.

The defendants, however, contend that the statute is remedial in its nature and that it is not necessary to give it a retroactive operation because being a rule of evidence it has relation to pending actions without any necessity for retrospective effect as this action was not brought until long after the statute became effective.

Our Statute of Frauds, Section 8621 of the General Code provides that:

"No action shall be brought whereby to charge the defendant * * * unless the agreement upon which such action is brought or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

The very language of this section indicates that it is remedial in its nature. It prevents an action upon any of the different promises enumerated in the statute unless they are in writing.

The statute under investigation in this case, on the other hand, does not employ such language. By its terms it virtually determines that no one can have any interest in the

property held by a corporation not for profit unless, at the time of acquiring it, it is in writing specified. It does not recognize the validity or existence of a parol trust, whereas the Statute of Frauds does not deny the existence of the contract but prescribes the manner in which it shall be proved. Although the location of Section 8623-112 is not a controlling matter in determining the meaning, nevertheless the fact that it was not placed by the Legislature in Section 8621, we think has some bearing upon the intention of the Legislature. Futhermore the statute was not incorporated in the statutes relating to evidence but is found, on the contrary, as one of the sections relating to corporations not for profit.

The question arises whether the statute is applicable to the circumstances under consideration in this case even though it be construed to be remedial in its nature. The Statute of Frauds is to prevent the assertion of a right unless the contracting parties have reduced their agreement to writing and it be signed by the party to be charged. In the instant case the trustee and the *cestui que trust* here are apparently in agreement. The trustee is not denying but asserting the trust. The question arises, for whose benefit is the Statute of Frauds? Does it inure to the benefit of the third party, or stranger to the transaction in which the conveyance was made and in which the alleged parol trust was established? When the contract has been fully completed and the purchase price paid by the *cestui que trust* as alleged in the petition, may an execution creditor have the benefit of the statute, providing the trustee in good faith is recognizing the trust and complying with its conditions? If Section 8623-112 is construed as analogous to the Statute of Frauds would it apply to an execution creditor who had no privity with the trustee or *cestui que trust* insofar as the transaction wherein the property was conveyed to the trustee was concerned. These inquiries led us to an investigation of authorities not cited in the briefs which seem to bear very closely on this question. In 27 Corpus Juris, page 307, Section 393, we find the following statement:

"A creditor cannot set up the statute of frauds to prevent the execution, by his debtor, of an oral executory contract

which the latter is willing to perform, or to avoid an oral contract executed by the debtor."

A number of cases from different jurisdictions are cited under this section, among them the cases of *Minns* v. *Morse*, 15 Ohio, 568 and *Lefferson* v. *Dallas*, 20 Ohio State, 68. In the first of these cases an owner of real estate made an oral contract to convey same and after all the purchase price had been paid, but before the premises had been conveyed and possession delivered, judgment was taken against the vendor and levy made on the premises. The purchaser sought to enjoin the levy and all proceedings against the land. The court held that as between the parties to the sale the vendor might have invoked the statute inasmuch as there was not such part performance "as would have required a decree of specific performance to prevent the statute against fraud from becoming an instrument in aid of a fraud." The court observes, at page 572 of the opinion:

"Now, what interest had the judgment debtors in this land at the date of the judgment upon which it operated as a lien? The answer is, a legal title, subject to a parol contract, partly executed, which the parties had a right, and in conscience were bound to execute, but could not be compelled to act involuntarily in the matter. In acting freely and without fraud, they fulfilled their contract by transferring the legal title (after the judgment lien attached) and perfecting and establishing the original equity."

The first syllabus of the above case is as follows:

"A parol contract to convey land, and, delivery of possession under it, is not void, but voidable; and, if executed afterward in good faith, the title of the vendee can not be defeated by a judgment against the vendor, rendered after the making of the contract, and before the execution of a conveyance in fulfillment of the agreement."

In the case of *Lefferson* v. *Dallas*, 20 Ohio State, 68, the same principle was laid down in the first syllabus of this case, as follows:

"A verbal contract for the sale of land is not absolutely void, but voidable only, at the election of either party. A creditor of the vendor in such contract cannot require that

considerations of equity, of good faith, and of moral obligation arising therefrom, shall be ignored, and the contract held void."

The second syllabus is as follows:

"A contract for the sale of real estate does not, of itself, free the land from the lien of judgments against the vendor. It is the payment of the purchase-money which entitles the purchaser to protection in equity; and to the extent that the purchase-money remain unpaid when the lien attaches, the land will be held bound."

The court at page 74 of the opinion observes:

"The statute of frauds, if pleaded by the vendor, would be a sufficient answer to such a claim. But here, the parol contract has been fully executed by the vendor, and the statute is set up to invalidate the contract, by a judgment creditor, who became such after the date of the contract, and after a part payment of the purchase-money. The statute does not make parol contracts for the sale of land absolutely void. By withholding a right of action upon them, it simply makes them voidable at the will of either of the parties. *But neither party can be compelled to ignore the considerations of equity, of good faith, and of moral obligation which may arise from such parol contract, and to avoid it by pleading the statute of frauds.*"

In the case of *Cool, et al,* v. *Peters Box and Lumber Company,* 87 Indiana, 531, a writ of attachment was issued on certain standing trees. A parol agreement for the sale of said growing trees had been made by the plaintiff in said case and the owner of the trees before the same had been attached. The trees had been paid for by the plaintiff and he had an oral license to enter the property to cut the same. The plaintiff had not taken possession of the timber in question nor had he cut the same nor had he done any act in relation thereto. In the attachment proceedings the trees were sold to satisfy the claim of the attachment creditor. The attaching creditor bought the trees and sold the same. The action was brought by the vendee of the timber against the purchaser at the attachment sale and his successors. The court held that the contract for sale of the trees was within the Statute of Frauds. We quote the second paragraph of the syllabus:

"A contract for the sale of growing trees or standing timber is a contract for the sale of an interest in land, and, if not in writing, under Section 4904, Revised Statutes 1881, one party can not enforce such contract against the other party; *but the statute, as a defense, is strictly personal to the parties, and can not be made available by a stranger to the contract.*"

The court in the course of its opinion cites the case of *Clary* v. *Marshall,* 5 B. Mon. 266, by the Supreme Court of Kentucky, and quotes the following from the opinion in said case:

"The vendor may avoid it" (the verbal contract), "by pleading or relying on the statute, yet he is left at liberty to waive his right to the defense and consummate the contract, and can not be deprived of his election to do so by a stranger. Though the vendor is not legally bound to fulfill his contract by a conveyance, yet a moral duty rests upon him to convey, and a moral right in the vendee to ask for a conveyance, and if the former choose to waive his legal right, in obedience to the dictates of his moral duty, by conveying or furnishing written evidence of his obligation to convey, a stranger to the contract has no right to complain nor to preclude him from this discharge of his moral duty, in whole or in part, upon the terms of the original parol contract, or upon terms which he may choose to exact, and which the vendee or sub-purchaser may be willing to concede."

The court further quotes *Browne Statute of Frauds,* Sec. 128 *et seq.*:

"That when such a contract comes in question *inter alios,* or for any other purpose than that of recovery between the parties, it is to a great extent regarded as a subsisting valid contract. A third party can not invoke the application of the statute for his own benefit."

The same principle is announced in the case of *Morrison et al* v. *Collier,* 79 Indiana, 417. The court in that case, at page 421 of the opinion, observes:

"The statute, however, does not apply to the correction of mistakes in description, and, if it did, the appellant could not interpose it. The parol contract is not void, and whether it shall stand depends on the choice of the parties. It is the personal privilege of a party, his privies or representatives, to abide by or repudiate his contract within

the statute, and a mere stranger may not interfere to prevent the performance."

In this case the third party was an execution creditor.

A number of other citations are given in 27 Corpus Juris, among which we cite the case of *Van Etten* v. *Currier,* (N. Y.) 4 Abbott Decisions, page 475, and quote from page 477 of the decision:

"It is claimed in behalf of the appellant, that the sale by Mrs. Griffin to the plaintiff was void under the statute of frauds. That is a question which he is not in a position to raise. He was neither a party nor a privy to the transaction he seeks to impeach. He can not assert, in her behalf, a defense which she elected to waive. The purpose of the statute of frauds is to provide a shield for the protection of parties, and not to furnish a weapon for the use of strangers and trespassers."

To the same effect is the case of *Acme Cement Plaster Company* v. *Greensboro Wood Fibre Plaster Company* (N. C.) 72 Southeastern, 569. We quote from the first syllabus:

"Since strangers to a transaction cannot take advantage of the statute of frauds, one seeking to charge a lessor of a business for goods actually furnished the lessee cannot assert the invalidity of the lease under the statute of frauds." * *

In a note on page 308 of 27 Corpus Juris entitled "Reason for rule" we find the following:

"It is well settled in cases arising under the statute of frauds and perhaps in others that the right to stand by or avoid a non-enforcible contract is personal to the parties to it, and creditors or strangers can not raise the question that the contract is non-enforcible when the parties wish to perfect it or require the parties to do that which they do not wish to do."

And, further:

"This doctrine is rested upon the theory that when parties have made a contract that is not enforcible, but that they are both willing to abide by, a stranger to the contract although he be a creditor can not come in and insist that the contract shall not be enforced, or rather that the parties to it shall not consummate it. But, in this class of cases the parties to the contract that was not

enforcible because forbidden by law could perfect it, and are permitted to do so without being hindered by strangers or creditors; and this is all that the courts have decided."

Although we do not find it necessary to hold that the statute in question is in contravention of the constitution, nevertheless, the petition alleges that the funds with which the premises in question were purchased were contributed by the people of the city of Columbus, Ohio, upon the express condition that said premises should be used for the purpose of dispensing charity to the poor and unfortunate in the city of Columbus, Ohio. The people of Columbus, therefore, acquired an equitable proprietary interest in the property in question. The *cestui que trust* in consummating the transaction by which the trust was created had a right to rely upon well established judicial precedent in this state permitting proof of a trust by parol evidence. The statute in question did not, by its terms, give any time to parties to past transactions to conform to the provisions thereof as the very condition of the statute requires that the trust be in writing at the time of the conveyance. If the statute be merely viewed as a change in the rules of evidence and not as a substantive provision it certainly "added new burdens and imposed new duties" and therefore the case of *State* v. *Cincinnati Tin and Japan Company,* 66 Ohio State, 182, would be applicable.

In conclusion we find that the statute in question is substantive in its nature and not remedial; that there being no language employed therein to indicate the contrary the presumption prevails that the operation of the statute is prospective only; that if the statute be viewed as an additional section to the Statute of Frauds, it operates only as between parties and privies and does not inure to the benefit of a third party such as the execution creditor in this case; that if the statute be viewed merely as a change in the rules of evidence it is invalid for the reason that it takes away entirely the equitable proprietary interest of the *cestui que trust* and takes away all his remedies.

The demurrer of the plaintiff, to the second defense of the answer will, therefore, be sustained and the defendants given leave to amend within rule.