Sedgwick, Administrator, *et al. v.* Tucker *et ux.*

### No. 7603.

SEDGWICK, ADMINISTRATOR, ET AL. *v.* TUCKER ET UX.

| 90 | 271 |
| 128 | 329 |
| 90 | 271 |
| 148 | 106 |
| 90 | 271 |
| 153 | 691 |

FRAUDULENT CONVEYANCE.—*Consideration.—Husband and Wife.*—Heirs of an intestate made partition by deed of the lands inherited, one of them, at the time indebted beyond his ability to pay, taking a conveyance to himself and wife, as tenants of the entirety. The wife had before that. joined in conveyances of her husband's very valuable lands only upon the promise by her husband to pay her the value of her inchoate interest in such lands, and these promises were the consideration moving from her for the conveyance of the lands in question to herself and husband, and there was no actual intent to defraud her husband's creditors.

*Held,* that the conveyance was valid as against the husband's creditors.

PLEADING.—*Exhibits.*—A deed referred to in a pleading, but which, though it may be evidence upon the trial, is not the foundation of the action or defence, need not be made an exhibit.

WITNESSES.—*Competency.—Decedents' Estates.*—Under the act of 1867, when an administrator is a party to a suit growing out of matters occurring after the death of the intestate, the opposite party was a competent witness for himself.

SAME.—*Husband and Wife.*—Where husband and wife were joined as parties, each was, under the act of 1867, a competent witness for himself or herself, without reference to the effect of the testimony given upon the interests of the other.

EVIDENCE.—*Value of Wife's Inchoate Interest in Husband's Land.*—Where the value of a wife's inchoate interest in her husband's lands is in question, evidence showing the age, health and habits of both is proper.

SAME.—*Intention.—Conveyance.*—Where it is in question whether an act was done to defraud creditors, it is competent to prove directly by the actor what his actual intention was.

SAME.—*Agreement.—Husband and Wife.—Competency of Witness.*—An agreement between husband and wife might, under the act of 1867, be proved by the wife, the same not being a confidential communication.

CONTRACT.—*Statute of Frauds.—Consideration.—Moral Obligation.—Deed.*—A parol promise which, by reason of the statute of frauds, can not be enforced, if the circumstances be such as to impose a moral obligation, will be a sufficient consideration to support a conveyance of lands.

INSTRUCTIONS.—Where upon the evidence there is really but one question fairly debatable, it is not error to instruct the jury that that is the controlling question.

SAME.—*Fraud.*—That " fraud is never presumed," if said by the court to the jury under such circumstances that it would be understood merely that fraud can not be found without some evidence of its existence, is not. available error.

From the Shelby Circuit Court.

*O. J. Glessner, E. S. Stillwell, T. B. Adams* and *L. T. Michener,* for appellants.

*T. W. Woollen* and *D. D. Banta,* for appellees.

NIBLACK, C. J.—This was a suit for an injunction. The complaint averred that the plaintiffs, William H. Tucker and Aurilla Tucker, were husband and wife, and the joint owners and tenants by entirety of the undivided seven-eighths parts of certain lands in Shelby county, of which a particular description was given, and which were conveyed to them jointly by William Clark and others, heirs at law of Ephraim Tucker deceased; that in March, 1876, Matthew Sedgwick, as the administrator of the estate of the said Ephraim Tucker, recovered judgment in the Shelby Circuit Court against the plaintiff William H. Tucker and one James J. Tucker, for about the sum of $1,658.70; that the said Sedgwick had since caused an execution to be issued on such judgment, and to be placed in the hands of Albert McCorkle, sheriff of said county of Shelby, ordering him as such sheriff to levy said execution on the lands described in the complaint; that McCorkle, as such sheriff, had levied such execution on said lands, and had advertised the same for sale; that said lands were not subject to levy and sale to satisfy said judgment, but that a sale of them would be a cloud upon the title of the plaintiffs thereto. The prayer was that Sedgwick and McCorkle should be enjoined from selling the lands thus levied upon to satisfy the judgment recovered by Sedgwick as above stated.

The defendants answered in three paragraphs:

1st. That said William H. Tucker was an heir of Ephraim Tucker, deceased; that as such heir he inherited an undivided one-eighth interest in the lands described in the answer; that the heirs of said decedent partitioned said lands among themselves by their several deeds thereto; that by such partition the land described in the complaint was assigned to William H. Tucker as and for his interest as an heir to said real estate;

that at his request the deed therefor was made jointly to him and his wife, the said Aurilla Tucker; that there was no other consideration for said transfer than the partition aforesaid; that at the time of making said deed, and long prior thereto, the said William was indebted to said Sedgwick, as administrator aforesaid, on which indebtedness a judgment was afterwards taken for the collection thereof; that the execution mentioned in the complaint was issued upon said judgment and by the sheriff levied upon the lands in the complaint mentioned; that at the time of making said deed said William had not sufficient other property to satisfy the debt aforesaid; that at the time of said levy he had no other property on which said execution could be levied to satisfy said judgment; that the deed to the said William and Aurilla was made at his request, with the intent on his part to cheat, defraud, hinder and delay his creditors—especially the defendant Sedgwick as the administrator aforesaid; and that said Aurilla gave no good or valuable consideration for said conveyance, and that the judgment and execution are unsatisfied and in full force. Wherefore defendants ask that the deed be set aside and annulled, and that the land be declared subject to levy and sale upon said execution.

The second paragraph contains the same averments as the first, with the additional one of notice, on the part of Aurilla, of the fraudulent intentions of said William. The third paragraph is a general denial.

The plaintiffs jointly replied, admitting that the said William H. Tucker was one of the heirs of Ephraim Tucker, deceased, and setting up specially the facts on which they relied in support of their claim of title to the land described in their complaint.

The plaintiff Aurilla Tucker also replied separately to the answer of the defendants, admitting that her co-plaintiff, William H. Tucker, was one of the heirs at law of Ephraim Tucker, deceased, and that as such heir he inherited an one-

eighth interest in the lands of which the said Ephraim died seized; that the said William H. Tucker, and other heirs of the said Ephraim, made partition of the lands which descended to them from him, said Ephraim, amongst themselves, and that the lands described in the complaint were set off to the said William H. Tucker as his interest in the landed estate of the said Ephraim; that the conveyance described in the complaint, and referred to in the answer, was thereupon made to the plaintiffs; that at the time of such conveyance the said William H. Tucker was indebted to the defendant Sedgwick, administrator of the said Ephraim's estate upon which indebtedness judgment was afterwards taken against the said William H. Tucker and James J. Tucker as charged; that at the time of such conveyance the said William H. Tucker was indebted in an amount beyond his ability to pay, but averring that long before such indebtedness to the defendant Sedgwick accrued, and long before the judgment upon such indebtedness was rendered, the said William H. Tucker had become indebted to her in the sum of $808 for money loaned at different times; that the said William H. Tucker had also been the owner of a tract of land in which she, as his wife, had an inchoate interest of the value of $2,000, which he bargained and sold to one James Cooper for the sum of $6,500; that she refused to join in the conveyance of said tract of land to the said Cooper unless upon the promise of some compensation for her said inchoate interest; that to secure her co-operation in such conveyance the said William H. Tucker promised to pay her the value of her said inchoate interest, or to convey, or cause to be conveyed, other lands to her of equal value with such inchoate interest; that afterwards the said William H. Tucker, being still her husband, was the owner of an eighty-acre tract of land in Howard county, in this State, which he bargained and sold to Ephraim Tucker and Ethan A. Tucker for the sum of $1,600, and in which she had an inchoate interest of the value of $500; that

she refused to unite with her said husband in conveying said tract of land to the purchasers thereof, unless he would promise to compensate her for her said inchoate interest; that he thereupon agreed either to so compensate her in money, or to convey, or cause to be conveyed, to her other lands; that upon such promises she united with her said husband in the execution of a deed to the purchasers aforesaid; that at the time partition was made of the lands of which Ephraim Tucker died seized, and for the purpose of repaying to her the money she had loaned to her said husband, with the interest thereon, and for the purpose of compensating her for relinquishing her inchoate interests in the lands sold by him as above stated, and for the purpose of inducing her to unite with him in the execution of the necessary deeds to the other heirs of the said Ephraim, her said husband promised and agreed with her that he would cause all the interests of such other heirs in the lands set off to him to be conveyed to her, but that the said other heirs of the said Ephraim Tucker refused to convey their interests in the lands so set off to her said husband to her, and instead of so conveying their said interests they executed a deed for such interests to her and her said husband as averred in the complaint; that she thereupon accepted such deed in part discharge of the indebtedness of her said husband to her; that at the time of the rendition of the judgment against the said William H. Tucker and James J. Tucker, described in the complaint, the said James was, and ever since has been, solvent and able to pay all his debts, and was then, and has continued to be, the owner of property, both real and personal, worth the sum of $10,000 over and above his indebtedness; that the said James J. Tucker was one of the heirs of the said Ephraim Tucker, and with full knowledge of the fact that he was then sued on the notes executed by him and the said William upon which the above named judgment was afterwards rendered against the said William and him, and with full knowledge of the financial condition of the

said William, not only advised the execution of the deed to her and her said husband, referred to in the complaint, but joined in the execution of said deed.

In further reply, she, the said Aurilla Tucker, denied that said deed was executed with any intent on her part or on the part of her said husband, to hinder, delay or defraud any of his, the said husband's, creditors. She also denied every allegation in the answer not herein admitted.

The defendants demurred separately to both paragraphs of the reply, and their demurrer was sustained to the first or joint paragraph, and was overruled as to the second or separate paragraph of the plaintiff Aurilla Tucker.

Trial by jury. Verdict for the plaintiffs. Motion for a new trial overruled. Judgment enjoining and restraining the defendants from either selling or attempting to sell the joint interests of the plaintiffs in the lands described in the complaint, to satisfy the judgment in favor of defendant Sedgwick.

Error is assigned upon the overruling of the demurrer to the separate reply of Aurilla Tucker, and upon the refusal of the court to grant a new trial.

It is objected, first, to the sufficiency of the reply of Mrs. Tucker, that the facts admitted and reiterated by it showed that the lands in controversy came to her husband by descent, and that, by the partition of the lands of Ephraim Tucker, that particular tract was first set off and assigned to him by parol; that he had hence acquired title to it in severalty before the deed was executed to him and to her jointly by the other heirs; that for that reason the deed was inoperative to convey any title to her, or to confer any new or different title upon him.

The answer, however, alleged that the heirs of Ephraim Tucker partitioned his " lands among themselves by their several deeds thereto," and that allegation was in effect admitted and re-asserted by the reply.

The plain inference, therefore, is that the partition was made by the mutual execution of deeds between the heirs, and not by parol.

It is next objected that a copy of the deed under which the appellees claimed title ought to have been filed with the reply, and that for that reason the paragraph was bad upon demurrer.

Neither Sedgwick nor McCorkle having executed the deed, it was not binding as a contract upon either of them, and hence was not the foundation of the action within the meaning of section 78 of the Code of 1852. It constituted only evidence of title, which does not have to be filed with the pleadings. *Stout* v. *Stout,* 77 Ind. 537 ; *Stribling* v. *Brougher,* 79 Ind. 328 ; *Smith* v. *King,* 81 Ind. 217.

It is further objected that the reply, at all events, showed that there was no sufficient consideration for the inclusion of the name of Mrs. Tucker in the deed under which she claims, nor for the execution of the deed in the form in which it was made.

This objection appears to us to be also untenable.

The reply contained facts establishing an indebtedness by the appellee William H. Tucker, to his wife, in a sum apparently quite sufficient to support such a conveyance, and as he, the said William, by the agreement to make partition, became entitled to receive a deed for the land in dispute, it was competent for him to direct that it be conveyed in whole, or in part, to his wife. The averments of the reply made the conveyance, as to Mrs. Tucker, and the benefits which might result to her from it, simply a case of giving preference to one creditor over another by her husband.

We think the court did not err in overruling the demurrer to Mrs. Tucker's separate reply.

The appellants assigned, amongst other things, as causes for a new trial:

1. The admission of William H. Tucker as a witness for the appellees.

2. The admission of Aurilla Tucker as a witness on her own and her husband's behalf.

3. The permission to Rodney F. Phillips to testify to the age, health and habits of William H. Tucker.

4. The permission to the said Phillips to testify to the age, health and habits of Aurilla Tucker.

5. The admission of the evidence of William H. Tucker, as to advancements he had received from his father's estate.

6. The admission of a former partition deed in evidence, in which there was a mistake in the description of the lands intended to be conveyed by it.

7. The permission to William H. Tucker to testify that he did not have the partition deed made to himself and wife with intent to defraud his creditors or any of them.

8. Permitting William H. Tucker to testify to his own age and health.

9. Allowing Aurilla Tucker to testify as to the indebtedness of her husband to her at the time the lands of Ephraim Tucker were divided.

10. Admitting the evidence of Aurilla Tucker as to whether there was an arrangement between her and her husband as to the payment of his indebtedness to her, and as to the manner in which such indebtedness was paid.

\*    \*    \*    .\*    \*    \*    \*    \*    \*    \*    \*

12. The permission to Aurilla Tucker to testify as to her own age and health.

13. Admitting the evidence of William J. Tucker to the effect that he was present when Aurilla Tucker refused to sign the deed to the Cooper farm, and that she was induced to sign the deed by the promise of her husband to compensate her either in money or in land.

14. The giving of certain instructions prayed for by the appellees.

15. The giving of other instructions by the court upon its own motion.

16. The refusal of the court to give some instructions asked for by the appellants.

In support of the first and second causes for a new trial it is argued that both of the appellees were incompetent as witnesses: *First,* because being husband and wife they could not lawfully testify, either for or against each other. *Secondly,* because the matters in controversy pertained to the assets of an estate of a decedent.

In answer to the first objection, it may be said that the action being in favor of the appellees jointly, each had the right to testify without reference to the effect which might result to the interests of the other. *McConnell* v. *Martin,* 52 Ind. 434; *Clouse* v. *Elliott,* 71 Ind. 302; *City of Lafayette* v. *Larson,* 73 Ind. 367.

As to the second objection, the answer is that the controversy was concerning matters which had arisen since the death of Ephraim Tucker. This brought the case within the exception contained in the second section of the act of March 11th, 1867, concerning the competency of witnesses, which was in force at the time of the trial of this cause. *Voiles* v. *Voiles,* 51 Ind. 385; *Clouse* v. *Elliott, supra;* 2 R. S. 1876, p. 132.

Besides, it was not the object of this suit to obtain a judgment against the estate of Ephraim Tucker within the meaning of the statute. Its only object was to restrain the administrator from causing a particular tract of land to be sold to satisfy a judgment already obtained, which, though nominally for the use of the estate, was within the personal control of the administrator.

The notes upon which the original judgment was rendered having been executed to Sedgwick after he became administrator, he might have sued upon them in his own name only, treating his designation as administrator as a mere *descriptio personæ,* and consequently surplusage. *Savage* v. *Meriam,* 1 Blackf. 176; *Capp* v. *Gilman,* 2 Blackf. 45; *Huff* v. *Walker,* 1 Ind. 193; *Shepherd* v. *Evans,* 9 Ind. 260.

A question was made at the trial as to the adequacy of the consideration upon which the name of Aurilla Tucker was included in the partition deed jointly with that of her husband, and, as incidental to the value of the estate which she took under the deed, several witnesses were permitted to testify as to the ages, health and habits of both herself and husband respectively.

We are unable to see that the admission of this evidence was in any manner injurious to the appellants, and hence can not hold that it was erroneously admitted. On the contrary, we see nothing improper in the admission of the evidence under the circumstances. This conclusion meets the objections made by the third, fourth, eighth and twelfth causes for a new trial.

The evidence touching advancements made to William H. Tucker, complained of by the fifth cause for a new trial, and the objections to its admissibility, are so generally and so meagerly set out in the bill of exceptions that we are left in doubt both as to its relevancy and irrelevancy. We can not therefore treat it as having been improperly admitted.

It was made to appear by the evidence that two partition deeds were made to the appellees; that there was a mistake in the description of the lands in the first deed, and that the second deed, upon which the appellees relied for title, was executed to correct and cure the mistake in the first deed. Both deeds were read in evidence at different periods of time at the trial, and it is objected that the reading of the first deed in evidence was erroneous.

In the first place, nothing has been suggested from which we can infer any injury to the appellants by reason of the introduction of the first deed in evidence.

In the next place, the production of that deed tended inferentially to rebut some statements made by one of the witnesses for the appellants. Besides, we know of no reason why it may not have been put in evidence as a link in the appel-

lee's chain of title if they chose to use it in that way. The sixth cause for a new trial was, therefore, not well assigned.

As applicable to the seventh cause for a new trial, it is contended that William H. Tucker ought not to have been permitted to state that he had no intention of defrauding his creditors when he had his wife's name inserted in the partition deed, and authorities are cited in support of that assumption.

It has been held, however, by this court that since parties have been admitted as competent witnesses in a cause, they may, as a legitimate consequence, be permitted to swear to the intent with which they did any material act. *Shockey* v. *Mills,* 71 Ind. 288 (36 Am. R. 196); *Bidinger* v. *Bishop,* 76 Ind. 244; *Parrish* v. *Thurston,* 87 Ind. 437.

The agreements and stipulations sworn to by Aurilla Tucker as having been made with her husband from time to time concerning their several property interests, and which appeared to have been in all respects very similar to those set up in her separate reply, constituted substantial and independent facts as to which she was competent to testify, and not confidential communications within the meaning of the act of March 11th, 1867, *supra. Schaffner* v. *Reuter,* 37 Barb. 44.

It is not necessary that an agreement or stipulation shall be valid and binding in all respects, to make it a sufficient consideration to support a conveyance. If the circumstances are such as to make it impose a moral obligation only, such an obligation will afford a good consideration for a deed of conveyance without being in writing. *Goff* v. *Rogers,* 71 Ind. 459; *Brown* v. *Rawlings,* 72 Ind. 505.

What William J. Tucker testified to was merely corroborative of that which Aurilla had stated as to one item of indebtedness claimed to have been due to her from her husband.

This is all that need be said as to the matters embraced in the ninth, tenth and thirteenth causes for a new trial.

The first instruction given by the court was, in brief, that

·the controlling question was whether the deed relied on by the appellees was or was not fraudulent as to the creditors of William H. Tucker.

Under the pleadings and evidence, that appears to us to have been a fair general presentation of the case to the jury.

The second instruction was more in detail, but in substance the same as the first, and for the same reason we see no objection to it.   We think the, only really debatable question between the parties was the good faith of the last partition deed to the appellees.

The third instruction told the jury that " fraud is never presumed."

It is claimed that this declaration is too broad and unlimited in its terms; that upon the establishment of certain facts fraud will be presumed.

As applicable to conveyances alleged to have been fraudulent, the question as to the fraudulent intent was a question of fact for the jury.   1 R. S. 1876, p. 506, section 21.   The instruction in question was given upon the evident theory that in a case like this fraud could never be presumed as an existing fact, in the absence of any evidence on the subject to which the charge of fraud had reference, and in that view the instruction stated the law of this State correctly.   *Leasure* v. *Coburn,* 57 Ind. 274; *Luce* v. *Shoff,* 70 Ind. 152.

The appellants urge as one of the strong points relied upon by them, that the evidence made out a case of parol partition only in the first instance, as between the heirs of Ephraim Tucker, that under such parol partition William H. Tucker went into the possession and became seized in his own right of the lands in controversy, and of another forty-acre tract since sold by him, before any deed was made to him and his wife, that the partition deeds, so called, were an after-thought merely, and conferred no new title and no title at all on the wife.

It was shown by the evidence that one of the heirs made a map of the lands left by Ephraim Tucker, and that upon that

map he marked out a division of the lands into eight equal parts, as nearly as was practicable, situated as the lands were; that at a meeting of the heirs afterwards held it was agreed that these lands so mapped off should be put up to public auction as between themselves, the bonus which might be paid for the respective choices to constitute a fund to be thereafter divided; that at the time the appellee William H. Tucker resided on the land in dispute, which, with another forty-acre tract since sold, as above stated, comprised what was classed as second choice of the respective shares into which it was proposed to divide the entire body of the lands; that William H. Tucker, when the sale took place, bid off the second choice of shares, as above designated, at a bonus of $375; that all the shares were bid off and disposed of as between the heirs at public sale in that way; that as soon thereafter as practicable the heirs proceeded to make deeds interchangeably for the shares as they were respectively disposed of at the sale above stated; that William H. Tucker was required to pay, and did pay, the bonus of $375 bid by him for his choice, before he could or did obtain the deed to him and his wife described in the complaint in this cause.

This made a case of plain and undeniable partition by deed, and was even more in the nature of a sale and conveyance as between the heirs than partitions usually are.

While the evidence was conflicting, there was evidence fairly tending to sustain the verdict. What has been said practically disposes of all the material questions presented by the record, whether arising upon the pleadings or the evidence, or upon instructions given or refused, and no sufficient reason has been shown for a reversal of the judgment.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.