Savage v. Lee et al.

No. 8633.

## SAVAGE v. LEE ET AL.

PAROL PARTITION.—*Possession.*—*Statute of Frauds.*—In this State a parol partition of real estate, consummated by possession, is binding; and an agreement for partition of lands is not within the statute of frauds.

Savage *v.* Lee *et al.*

SAME. — *All Cotenants Must be Affected.* — There can not be said to be a voluntary partition, or an agreement therefor, unless by the agreement of all the cotenants of the property, there is, or there is to be, a severance of the interest of one or more of the cotenants in at least some part of such property. No arrangement between tenants in common can result in a partition, unless it operate upon and affect the interests of all the tenants in some part of the common estate.

SAME. — *Agreement between Part of Cotenants.* — Where certain real estate was owned by four persons as tenants in common, and there was a transaction between three of them, such that, if they had been the only tenants, there would have been a partition, or an agreement for a partition, of the whole common estate between such three, a certain portion to one in severalty, and the remainder to the other two jointly, the fourth tenant still holding his interest in both such tracts,

*Held,* that this could not be regarded either as a partition or an agreement therefor.

STATUTE OF FRAUDS.—*Agreement between Cotenants for Exchange of Interests.* —Where real estate is owned by more than two tenants in common, an oral agreement between two of such tenants to exchange with each other their undivided interests in definite portions of the common estate, is within the statute of frauds; but it is not necessary, in order to withdraw such a contract from the operation of the statute, that there should be the same character of taking possession as in the case of an ordinary parol agreement for the sale of land; and where, in such a case, in pursuance of the agreement, one of the parties thereto conveyed by deed his interest in a definite portion of the common property, and the grantee took possession of such portion, exclusive of such grantor, who took possession of another portion of the common property, exclusive of the other party to the agreement, and made lasting and valuable improvements thereon, and there was mutual acquiescence in such change of possession for fourteen years;

*Held,* that there was sufficient part performance to take the contract out of the operation of the statute.

SAME.—*Right to Interpose Statute is Personal.*—Only a party to the contract, or his privies or representatives, can repudiate it by interposing the statute of frauds.

From the Wayne Superior Court.

*T. J. Study* and *C. H. Burchenal,* for appellant.

*A. L. Study,* for appellees.

MITCHELL, J.—The facts upon which the rights of the parties to this controversy depend are fully set out in an answer and counter-claim, and are, in substance, as follows:

Samuel C. Larkin died intestate on the 16th day of Sep-tember, 1837, residing upon and owning 120 acres of land in Wayne county, Indiana. He left surviving him his widow, Hannah Larkin, and the following named children : Moses F., William C., Martha A., Susannah, Sarah J. and Mary E. Larkin. Susannah died December 1st, 1851; Sarah J. died January 10th, 1859, and Mary E. September 4th, 1859, all dying childless and without having been married. On the 22d day of December, 1853, Moses F. conveyed all his interest in the common estate, being that inherited from his father and deceased sister Susannah, to his brother William C., who also owned a forty-acre tract in his own right in the same quarter section. On the 3d day of August, 1864, William C., Martha A., who was then the wife of David S. Lee, and their mother, Hannah Larkin, made an agreement for the purpose of effecting a partition and division, so that William C. should have his share in severalty, and the mother and Martha theirs together. The agreement was, in substance, that William should have a thirty-acre tract of the common estate which adjoined his forty, and twenty-five and one-half acres in ad-dition off the north end of the common property, which ad-joined the thirty-acre tract. It was agreed that the thirty and twenty-five and one-half-acre tracts should constitute his full share in the whole estate at that time, and that Martha was to have all his interest in the remaining sixty-five and one-half acres, in consideration of which she and her mother agreed to convey their interest in the thirty and twenty-five and one-half-acre tracts.

In pursuance of this agreement, the county surveyor was procured, who surveyed off the twenty-five and one-half acres from the main tract and fixed the boundaries thereto.

William then sold his forty and the thirty and twenty-five and one-half-acre tracts to Eby, and made a conveyance to him, and procured Martha and her husband and his mother to join in the conveyance. Eby took possession of the whole, built a line fence on the boundary as fixed by the surveyor,

paid the whole purchase-price to William, and occupied the land accordingly for a period of fourteen years before the bringing of this suit.

Martha and her husband and mother occupied the whole up to the time of this arrangement, accounting meanwhile to William for his share of the proceeds. After this agreement they occupied the sixty-five and one-half acres exclusively, made lasting and valuable improvements on it, William making no claim whatever to any interest in it. By mistake or oversight, William C. never made any conveyance of his interest in the sixty-five and one-half-acre tract to Martha, which it was agreed, as part of the original arrangement, should be done.

At the time of the agreement above mentioned between William C. and Martha A. and their mother, Moses F. Larkin owned a small interest in all the land, which he acquired by the death of his sisters Sarah J. and Mary E., which events occurred after he had conveyed to his brother William C. No notice whatever was taken of this interest in the attempt at partition between William C. and Martha, and so far as appears he consented to that arrangement.

On the 4th day of August, 1873, Hannah Larkin died, having remained a widow from her husband's death. She left no descendible estate in the land, except what she inherited from her deceased daughters, which it is conceded went in equal shares to her surviving children, Moses F., William C. and Martha A.

William C. Larkin, after his mother's death, became and still is insolvent. On the 26th day of May, 1877, the plaintiff, Abraham J. Savage, with notice of the rights of Martha A. Lee, purchased at a sheriff's sale, which was made by virtue of an execution issued on a judgment taken against William C. Larkin, all his interest in the sixty-five and one-half-acre tract, and upon that sale he took a deed from the sheriff May 31st, 1878.

On the 28th day of October, 1878, he commenced this pro-

ceeding in the court below for partition, and now claims that the arrangement between William C. and Martha A. and her mother was not effectual to vest any right in Martha to William's interest in the sixty-five and one-half-acre tract, and that he is entitled to have his whole interest set off to him as though no agreement had ever been made.

The questions which are presented for decision are: 1. Did the arrangement between William C. Larkin and his sister constitute an executed parol partition? 2. If it did not, was the agreement such, and was it so far performed, as that it can be specifically enforced in equity in her favor? 3. If it was not enforceable between the parties to it, have they so far performed it that no other person may invoke the statute of frauds to avoid it?

That a parol partition of real estate, which is consummated by possession, is binding, is not now an open question in this State, and that an agreement for partition of lands is not within the statute of frauds is also settled. *Moore v. Kerr*, 46 Ind. 468; *Bumgardner v. Edwards*, 85 Ind. 117.

This proposition is not seriously disputed, but it is contended that neither the facts averred nor proved bring the case within the rule. In any view which may be taken of the transaction, it does not seem possible to conclude that there was either a partition consummated, or an agreement which if fully carried into execution would have effectuated that result.

Had there been but two tenants in common, the contract set out, if carried into execution, might aptly have been called an agreement for partition; or, if all those interested in the estate had engaged to set off to any one, or more, his or their interest in severalty, either in the whole or any part of the common estate, the same result would have been reached if the engagement had been consummated.

Partition does not require that the interests of all the joint tenants, or tenants in common, be severed, but it can not be said that a voluntary partition is made, or agreed to be made,

unless by the agreement of all the parties concerned in the property there is, or is to result therefrom, a severance of the interest of one or more of the joint owners in at least some part of the common property. *McConnell* v. *Carey*, 48 Pa. St. 345; *Gates* v. *Salmon*, 46 Cal. 361.

At the time the agreement we are considering was made, Hannah Larkin, the widow, Moses F. and William C. Larkin and their sister Martha, were tenants in common of the estate. True, the interests of the mother and Moses F. were inconsiderable, but they were tenants in common nevertheless. Assuming that the arrangement was fully consummated as agreed upon between William C., Martha and their mother, the result was that Moses F. was tenant in common with William C. in the thirty and twenty-five and one-half-acre tracts, and was also the like tenant with Martha and his mother in the residue, and, therefore, had the right to bring the whole estate into court and ask partition without regard to what had previously taken place between any of the other tenants; in other words, the interest of Moses F. in the whole estate remained unaffected, and no arrangement between tenants in common can result in a partition unless it operates upon and affects the interests of all in at least some part of the common estate.

Under the rule of decision announced by this court in the cases already cited, it would be conceded that if the arrangement had been for a technical partition, the statute would have no application.

The purpose of the parties to the agreement was manifest. The brother desired, by an exchange of his interest in the sixty-five and one-half-acre tract, to acquire the interest of his sister and mother in the thirty and twenty-five and one-half-acre tracts. The exchange was orally agreed upon, and was so far consummated as that the sister and mother conveyed their interests on the one hand, at William's request to Eby, who at once took possession in pursuance of the arrangement, and has ever since maintained it. Whatever pos-

session Martha previously had of that part of the common property she surrendered, and took all the possession that it was possible for her to take of the sixty-five and one-half-acre tract. Her possession, which up to that time had been as tenant in common with her brother William in the whole tract, then became in the sixty-five and one-half-acre tract exclusive of him; while the possession of William's grantee in the other tracts became exclusive of her. Neither could have entered on to the possession of the other without becoming a trespasser. In this change of possession there had been mutual acquiescence by all parties for a period of fourteen years. Superadded to this was the fact, corroborative of the contract and of the purpose of the possession, that Martha made lasting and valuable improvements.

That an oral contract made by tenants in common for the exchange of undivided interests in lands is within the operation of the statute, can not be doubted; but that the same character of taking possession is necessary to withdraw such a contract from its operation, is a proposition which is not supported by the weight of authority.

Courts of the highest authority have gone much farther than we find it necessary to go in this case, and have held that while the requisites to take a parol contract for the exchange of lands out of the operation of the statute are the same as in sales, there is nevertheless a marked difference in the evidence which establishes the possession; and so it was said in the case of *Moss* v. *Culver*, 64 Pa. St. 414; S. C., 3 Am. R. 601: "A sale is confined to a subject coming from a single side. It has no relation to, or dependence on any other subject. The evidence of possession taken of it is therefore confined to the single subject. * * * * But an exchange necessarily has a subject on each side which stands related to the other. * * If therefore the evidence shows a clear, unequivocal, and complete taking possession of one of the subjects of an exchange, by the party owning the other subject, it strengthens the evidence of a possession taken by the opposite party of the

corresponding subject. Evidence of possession that might seem weak and inconclusive in the case of a parol sale, is thus made clear and convincing in the case of an exchange." See, also, *Reynolds* v. *Hewett,* 27 Pa. St. 176; *Baldwin* v. *Thompson,* 15 Iowa, 504; *Devin* v. *Himer,* 29 Iowa, 297; *Sweeney* v. *O'Hora,* 43 Iowa, 34.

In the case of *Caldwell* v. *Carrington,* 9 Peters, 85, it was held that where an exchange of lands had been made by an oral contract, the taking possession by one of the parties took the contract out of the statute of frauds.

In the case of *Littlefield* v. *Littlefield,* 51 Wis. 23, which is analogous in principle to the case under consideration, the learned justice delivering the judgment of the court said: "If these cases mean that a tenant in common in possession, who purchases by parol of his cotenant also in possession, can not take the exclusive possession of the land from thenceforth, and on performance of the contract maintain an action for its specific performance, especially if in good faith he makes valuable improvements upon the land, we can not follow them." Reed Statute of Frauds, section 582; *Parrill* v. *McKinley,* 9 Grat. 1.

Mrs. Lee having conveyed away her interest in the one part of the common property in all respects according to the agreement, and her grantee having taken the exclusive possession of the tracts so conveyed under the contract, and she having taken possession of the other to the exclusion of her brother, and having in good faith made valuable improvements, these facts constituted such a part performance that it would now result in a gross fraud upon her to permit the statute to be invoked to defeat her rights under the contract. A court of equity will not permit the statute to be interposed, when the contract has been so far performed in reliance upon it that its interposition would work a fraud upon an innocent party. *Teague* v. *Fowler,* 56 Ind. 569; *Tinkler* v. *Swaynie,* 71 Ind. 562.

The appellant purchased with notice of her rights, and

can not be in any better position than the person through whom he claims.

It is argued that as a contract which is within the statute is not void, and because the right to take advantage of the statute is a right personal to the parties to the contract and those in privity with them, the appellant is, therefore, not in a position to avail himself of its benefits. That the right to take advantage of the statute of frauds is a personal privilege, and that it is only competent for one who is a party to the contract, or his privies or representatives, to repudiate it by interposing the statute, is the settled law of this State. *Morrison* v. *Collier*, 79 Ind. 417; *Cool* v. *Peters, etc., Co.*, 87 Ind. 531; *Dixon* v. *Duke*, 85 Ind. 434, and cases there cited.

Whether the appellant's purchase at a sheriff's sale, under the circumstances disclosed, put him so far in privity with William C. Larkin as that he could avail himself of the statute, we do not, in view of the conclusion already reached, decide. We think the evidence sustains the answer and counter-claim, and that there is no error in the record.

Judgment affirmed with costs.

Filed April 29, 1885.