Wright, Administrator, *v.* Jones *et al.*

```
105   17
127  356

105   17
131  228
132   26
132  392

105   17
137  620
139  226

105   17
141  184

105   17
149  159
149  161
152  262
```

No. 10,726.

## WRIGHT, ADMINISTRATOR, *v.* JONES ET AL.

WILL.—*Construction.—Life-Estate.—Devise of Fee to Trustee.*—Where all the fee of a wife's estate is devised by her to a trustee with the power of management and disposition, and a life-estate in part of it is carved out for her husband, with the remainder in fee vested in the trustee, the husband takes no greater estate under the will than that carved out for him. Such a devise to the husband shows an intention on the part of the testatrix to make the testamentary provision take the place of the provision made by law.

SAME.—*Agreement between Husband and Wife.—Election by Husband.—Relinquishment.—Family Settlement.*—Where a husband, to secure a life-estate in the homestead owned by his wife, verbally promises to relinquish his claim to all other interest in her property, and she, in consideration of that promise, undertakes to vest such life-estate in him, the agreement is valid and may be carried into effect by will, and a family settlement after her death.

SAME.—*Contract.—Equitable Consideration.—Debtor and Creditor.*—In such case, an equitable consideration is sufficient to uphold the contract of the husband, and he may perform it, notwithstanding the objections of his creditors.

SAME.—*Parol Partition.*—A parol partition of lands, where possession is taken or retained under the agreement of partition, is valid, and the principle that governs such partitions applies to family settlements.

JUDGMENT.—*Interest Affected by Lien.*—The interest which the lien of a judgment affects is merely the actual interest the debtor has in property.

STATUTE OF FRAUDS.—*Defence Personal.*—The defence of the statute of frauds is a personal one, and a creditor can not make it for a debtor who insists upon performing his oral agreement.

From the Marion Superior Court.

*W. Wallace, L. Wallace* and *O. T. Boaz,* for appellant.

*G. Carter, J. N. Binford, A. C. Harris* and *W. H. Calkins,* for appellees.

ELLIOTT, J.—The theory of the appellant's complaint is that the real property in controversy is subject to seizure upon judgments rendered against the appellee Jesse Jones, and that his title to the property, derived through his deceased wife, Louisa J. Jones, is in fee. The fifth paragraph of the answer of the appellees avers that "In the year 1840

Jesse Jones married Louisa J. Norwood; that at the time of said marriage neither of them had any property or estate; that two children only were born of said marriage, namely, the said Maria, now intermarried with said Foltz, and the said Mary, now intermarried with the said Hawkins; that after said marriage Jesse Jones acquired property from, and by means of, his own industry up to the date of the making of the will, hereinafter set forth. They also show that during the time intervening between the marriage of said Louisa and the making of the will hereinafter mentioned, the father of said Louisa, Mr. George Norwood, from time to time, gave to her, out of his own estate, money and property, which she kept separate and apart from the estate of her said husband, and controlled and received and used the proceeds and income thereof as her own at all times during her life; that heretofore, to wit, on the 23d day of April, A. D. 1874, the said Louisa owned the property described in the complaint, and she, with her husband, resided in certain property situate on Illinois street in the city of Indianapolis, which was known as their home, and which, with her other property, had been given to her by her father; that on said day, she being in feeble health, desired to make a will so as to secure her husband a home during the remainder of his life in said homestead, and to insure to their children during their lives all the rest and residue and remainder of her estate of which she might die seized. At that time said Jesse Jones, her husband, owned valuable real estate in said city of the value of $50,-000, and was not in debt to any persons whatsover. And the said Jesse greatly desired, in case his wife should first die, to spend the remainder of his life in said family homestead, in which they had theretofore resided for a great many years, and wherein said children had been born and married; that to carry out their mutual purposes and desires, it was then and there mutually agreed, in consideration of their mutual promises, that the said wife, Louisa, should make a will giving to him the use and occupancy of said home during his

life, in consideration of which he would and did, then and there, agree that she should devise all the rest and residue of her estate to her said children and their descendants; and thereupon, in fulfilment of said mutual agreement and understanding, the said Jesse procured an attorney at his own expense, to wit, fifty dollars, to write a will expressive of their contract, agreement and mutual desire, which will was, on said day, drafted and submitted to them jointly, and accepted and approved by them jointly and severally, as being in fulfilment of said agreement and the true expression of their desires, which will was then and there executed by the said Louisa, and with the full consent of said Jesse, and in pursuance of their agreement aforesaid."

These allegations are followed by a copy of the will of Louisa J. Jones, but we do not deem it necessary to set it forth in full. It is sufficient to say that it makes a bequest to the church of which she was a member, devises the fee of all of her real estate to Howard M. Foltz, in trust for her children, and makes the following provisions respecting her husband:

"Article 3. I give and devise unto my dearly beloved husband, Jesse Jones, my present house, being the premises and house wherein we now reside, and known as number 488 North Illinois street, in the city of Indianapolis, Marion county, Indiana, and being parts of lots seven and eight in Blake's subdivision of out-lot one hundred and seventy in said city, to have and to hold during the term of his natural life, and at his death to descend to my executor, as hereinafter provided, to be held by him as herein directed.

"Article 4. I give and devise and bequeath unto my executor, Howard M. Foltz, and to his successor or successors in and to said trust, all the rest and residue of my real and personal estate, to have and to hold in trust for my two daughters, Mrs. Mary V. Foltz and Maria A. Hawkins, and their children and descendants, in the manner and for the uses following, that is to say:

"*First.* My executor shall have and take possession, charge and control of all real estate held by me at the time of my death, and of said house and lot No. 488 North Illinois street at the death of my husband, if he shall survive me; and he shall use and rent the same in such way and manner as he may deem best and most advantageous to my estate, and out of the income thus arising from year to year, he shall pay all taxes, assessments and repairs on or against any or all of said real estate, and the net income thus arising therefrom shall be held by him and used and applied in the same way and manner as the income of my personal estate.

"*Second.* If, at any time during the life of my said husband, he and my said daughters shall deem it best that said real estate, or any part thereof, should be sold, and if, after the death of my said husband, my said daughters, or the survivor of them, shall so wish, then, on such wish being made known in writing to my executor, the whole or such parts may be sold by said executor, from time to time, under the order and supervision of the proper court having jurisdiction over such executor, as may be deemed best, and the proceeds realized from any and all sales shall be by said executor added to and held in trust for the uses and applied in the same manner as my personal estate."

The answer further alleges that Louisa J. Jones died on the 16th day of February, 1879; that her will was duly admitted to probate; that immediately after the will was probated, the executor surrendered to Jesse Jones the property devised to him; that the latter elected to receive the property in lieu of his interest and right in the estate of his deceased wife, and that it was so delivered to him by the children and trustee of the testatrix.

The first question in natural order is as to the proper construction of the will. If it does not assume to divest Jesse Jones of all interest in the estate of his wife, except that especially devised to him, then, without further inquiry, the principal and decisive point involved in this controversy must

be resolved in favor of the appellant. Our conclusion is that it does assume to cut him off from all other interest except that specifically devised to him. We put our conclusion upon this general principle: Where a will assumes to dispose of the entire estate of the testator, does dispose of it in terms, does devise the entire estate in trust for beneficiaries expressly named, carves out for a designated devisee a life-estate in a particular piece of property, and directs that the remainder shall, after the expiration of the life-estate, fall into the trust for the beneficiaries designated, it devises to the person for whom the life-estate is carved out that particular estate, and nothing more. This principle is founded on the fundamental one that undergirds all the doctrine of the construction of wills, and this fundamental principle is, that the intention of the testator rules upon all questions of construction. The principle that courts must ascertain and execute the intention of the testator is an elementary one, and needs no more than its statement to command approval. To deny the principle which we first stated involves a denial of this cardinal principle which lies at the foundation of the chief rule for the construction of wills; since it is evident that if the fee in all the property of the testator is disposed of by a devise to a trustee, nothing remains in the devisee to whom a life-estate is devised except that particular estate, for the remainder in fee goes with the other property into the trust. It is inconceivable that a testator should, in clear words, devise all his estate in fee to a trustee, and yet vest in a devisee, to whom is given a life-estate, a fee in part of the same property devised in trust for the beneficiaries named. No reasoning can be valid which assumes that all of the fee of all of the property of a testator can be devised to a trustee, and yet a fee in one-third of the property vest in a devisee to whom a life-estate is devised in clear and unambiguous terms. To restate our original proposition in a somewhat different form: Where all of the fee of all of a testator's estate is devised to a trustee, and a life-estate in part of it is carved out for a designated

devisee, with the remainder in fee vested in the trustee, the devisee of the life-estate takes no greater estate under the will than that carved out for him. The will under examination would be thrown into irremediable confusion, the intention of the testatrix thwarted, and an irreconcilable inconsistency be produced between its provisions, if the theory of the appellant, that it devises a life-estate to the husband and also leaves in him one-third of the land in virtue of his right as surviving husband, should be adopted; on the other hand, the opposite view carries into effect the intention of the testatrix, prevents all conflict between the different parts of the instrument, and makes its provisions clear and consistent from the beginning to the end. The one result it is the duty of the courts to avert; the other it is their duty to bring about, if it can be done without doing violence to the language of the instrument. Much stronger the reason for bringing about this latter result, where the language is well chosen and unambiguous and the intention clearly and adequately expressed.

We find no decisions directly in point, but we do find cases closely analogous; so much so, indeed, as to declare the principle which rules the case. The cases to which we refer are those in which it is held that where the provisions of the will are clearly inconsistent with the right to dower, the widow will be put to an election. The common law authorities generally agree in holding that, as Redfield expresses it, " It must be reasonably clear that the provisions of the will were intended in lieu of dower." 2 Redf. Wills, 353. Some of the authorities state the rule in stronger terms. 1 Pomeroy Eq. Juris. 541; *Kelly* v. *Stinson*, 8 Blackf. 387; *Young* v. *Pickens*, 49 Ind. 23; *Holdich* v. *Holdich*, 2 Y. & C. Ch. 18; *Strahan* v. *Sutton*, 3 Vesey, 249; *Lasher* v. *Lasher*, 13 Barb. 106; *Carroll* v. *Carroll*, 20 Texas, 731; *Fuller* v. *Yates*, 8 Paige, 325; *Brown* v. *Caldwell*, 1 Speers Eq. 322.

Much as the law favors the right of dower, and strong as are the rulings in favor of it, yet it is nevertheless held that where the will on its face clearly shows that the intention

was that the provisions of the will should be in lieu of dower that intention will prevail. The question received consideration in *Stewart* v. *Stewart*, 31 N. J. Eq. 398 (1 Am. Probate Cases, 168), and it was said : "A wife will be put to her election between a testamentary disposition in her favor and her dower, when it clearly appears from the will that the testamentary provision was intended as a substitute for the legal one; and the intention will be implied if the claim of dower would be clearly inconsistent with the will." In a similar case it was said by the Court of Appeals of New York, in speaking of the rule that dower is not barred unless the intention to bar it is clear, that "The intention need not be declared in express words. It may be implied, if the claim of dower would be plainly inconsistent with the will." *Savage* v. *Burnham*, 17 N. Y. 561, 577.

These authorities, to which many more might be added, express the general opinion of the courts and text-writers, and it only remains, in the discussion of this branch of the case, to ascertain whether there are authorities declaring that a will, framed as the present is, can be said to clearly evidence an intention to make the testamentary provision take the place of the provision made by law. There is in this will one controlling provision that evidences the intention to make the testamentary provision a substitute for the legal one, and that is the provision that the whole estate, after the termination of the life-estate, shall vest in fee in a trustee clothed with the power of management and disposition. The rule is, that where there is such a devise to trustees, the testamentary provision supplants that made by law, in so far at least as to put the party claiming in virtue of marital rights to an election. It is said by an English court, that "The will also gives to the trustees the management of the estate, and directs them to make such repairs as they may deem necessary : this provision is also inconsistent with the existence of a right to dower in the wife." *Parker* v. *Sowerby*, 4 DeG. M. & G. 321. To the same effect are the decisions in *Butcher* v. *Kemp*, 5 Mad. 45,

*Roadley* v. *Dixon*, 3 Russ. 192, *Miall* v. *Brain*, 4 Mad. 68, *Goodfellow* v. *Goodfellow*, 18 Beav. 356.

But it is not necessary to put the construction of the will upon this ground alone, important as is the influence which it exerts, for the whole scope of the language employed clearly and forcibly indicates an intention that all of the real estate of the testatrix, except the life-estate carved out for her husband, shall go to the trustee for the benefit of her children, and this is irreconcilably opposed to the theory that the husband has a life-estate in the property specifically devised to him, and, in addition, an estate in fee in one-third of all the real estate of which his wife died seized.

It is argued with signal ability in the able brief of appellant's counsel, that, conceding that the will does assume to divest the husband of his interest as the heir of his wife, still the appellant must succeed, because a husband can not be put to an election. We do not find it necessary to decide this question, for we think the sufficiency of the fifth paragraph of the answer is maintainable without deciding it.

Our opinion is that the answer pleads facts showing a valid family settlement, which it is the duty of the courts to uphold. We suppose it to be quite clear that if Jesse Jones had agreed with his wife that he would join her in conveying the fee of her real estate to their children, and had executed a deed at the time the will was made, and he was then free from debt, the deed would have been valid. We can conceive of no reason why a husband might not join with his wife in conveying to their children her land, reserving to himself such an interest as they might agree upon. If the contracting parties, at a time when there were no impediments to the consummation of the contract, should agree in writing upon the disposition that should be made of the property of the wife, we can perceive no legal reason, nor any equitable principle, that would prohibit the execution of such a contract. If the husband prefers a life-estate in a particular piece of property, and to secure the desired estate promises to ac-

cept such a life-estate and to relinquish his claim as to all other interest in his wife's property, and she, in consideration of that promise, undertakes to vest that life-estate in him, the agreement is valid, because it possesses all the essential features of a contract. If the contract were carried into effect by the execution of a deed, it would, as it seems to us, be impossible to impeach it. No ground upon which it could be impeached occurs to us, and none has been suggested. The difference between the case we have put by way of illustration and the real case consists simply in the method of vesting the life-estate in the husband. In the supposed case the method is assumed to be by deed, while in the real case it is by will. We can not believe that the method of vesting the property, whether by deed or by will, can change the legal aspect of the case, provided there is, as here, an execution of the contract by the husband by a family settlement and a delivery and an acceptance of the respective estates created by the wife's will. Once it is granted that such a contract is valid, then it must follow that the method of vesting the estate is not of controlling importance. Equity regards the substance of a transaction, and not the form. Where the substantial merits of a transaction bestow rights upon the parties, form is not of much moment. But there is no legal objection to the form here adopted. A contract to vest land in another by devise is valid. *Bell* v. *Hewitt*, 24 Ind. 280; *Caviness* v. *Rushton*, 101 Ind. 500 (51 Am. R. 759); Pollock Prin. of Con. (2 Am. ed.) 310.

Here, then, was a contract founded upon a sufficient consideration, and carried into execution in a legal method. If Jesse Jones had executed a deed conveying all of his interest in his wife's land in consideration of her promise to make a devise to him, it would certainly have been valid, and if this be true, must it not also be true that he may, after his wife's death, make good his promise by performing his oral agreement? The contract exists; all that is lacking is the written evidence. The agreement is as complete between the parties

as it would be had it been reduced to writing, and there is no reason why the party who has received what he contracted for may not decline to avail himself of the statute of frauds to defeat the contract. No man is bound to make the defence of the statute of frauds; he may, if he elects, perform his part of the oral contract, and this is what Jesse Jones has elected to do.

It perhaps is true that at the time Mr. Jones consummated the acceptance of the life-estate devised to him by the settlement made with his children and their trustee, the consideration then moving to him was an equitable and not a legal one, but this does not change the legal aspect of the case, for it is well settled that an equitable consideration will support a contract. *Wills* v. *Ross,* 77 Ind. 1 (40 Am. R. 279); *Elston* v. *Castor,* 101 Ind. 426, *vide* p. 432 (51 Am. R. 754). There are many authorities collected in an article entitled Equitable Consideration, 15 Cent. L. J. 386, which very fully discuss the question and strongly support our conclusion.

Where there is an equitable consideration, a debtor may, notwithstanding the objections of his creditors, perform his contract. It is not for creditors to prevent a debtor from doing what, in good conscience, it is his duty to do. *Hays* v. *Reger,* 102 Ind. 524; *Brown* v. *Rawlings,* 72 Ind. 505; *Goff* v. *Rogers,* 71 Ind. 459; *Wills* v. *Ross, supra,* see p. 8; *Jarboe* v. *Severin,* 85 Ind. 496; *Copeland* v. *Copeland,* 89 Ind. 29, see p. 35; *Sedgwick* v. *Tucker,* 90 Ind. 271, see p. 281; *Livermore* v. *Northrup,* 44 N. Y. 107; *Hyde* v. *Chapman,* 33 Wis. 391; Bump Fraud. Con. 220.

The fact that the contract of Jesse Jones was not in writing does not destroy the rights of his children. One reason for this conclusion is supplied by the authorities we have already cited, and another reason is, that the defence of the statute of frauds is a personal one, and a creditor can not make it for a debtor who insists upon performing his oral agreement. *Wolke* v. *Fleming,* 103 Ind. 105, see p. 111;

*Savage* v. *Lee,* 101 Ind. 514; *Cool* v. *Peters, etc., Co.,* 87 Ind. 531; *Dixon* v. *Duke,* 85 Ind. 434; *Morrison* v. *Collins,* 79 Ind. 417.

A parol partition of lands, where possession is taken or retained under the agreement of partition, is valid. *Savage* v. *Lee, supra; Hauk* v. *McComas,* 98 Ind. 460; *Bumgardner* v. *Edwards,* 85 Ind. 117; *Moore* v. *Kerr,* 46 Ind. 468. The agreement made between Jesse Jones, his children and their trustee was, in effect, a parol partition, for no new titles were created, and nothing more than a division of the interests of the devisees of Mrs. Jones was made, and the estates of the devisees respectively set apart to them. But, if the transaction could not be regarded as a parol partition, still the conclusion as to its validity must be the same, for the principle that governs parol partitions applies to family settlements. Pomeroy Specific Perf., section 121; Fry Specific Perf. (3d Am. ed.), section 583.

The settlement made after the death of Mrs. Jones was a family settlement, and such settlements are regarded with favor by the courts. The reasons for this rule have often been stated, and it is needless for us to repeat them. *Shuee* v. *Shuee,* 100 Ind. 477; Story Eq. Jur. (12th ed.), section 132; 2 Leading Cases in Eq. (4th Am. ed.) 1683; *Leach* v. *Fobes,* 11 Gray, 506.

The case under examination is an unusually strong one, for here the settlement carried into effect a contract founded upon an equitable consideration, made with the testatrix prior to her death, and gave full effect to the provisions of the will. The testatrix intended her husband to have a life-estate in the particular property devised to him. She gave him possession, he agreed with her to relinquish all interest in her other property, and the settlement made after her death carries into execution the oral contract, secures to the children the estate their mother desired them to have, and gives to the husband that which he agreed to accept. The

highest considerations of equity and justice demand that such a settlement should not be disturbed.

Judgment creditors are not *bona fide* purchasers; their rights are essentially different; they have no interest or title in their debtor's land; all they have is a mere lien. The lien is only on the actual interest of the debtor in the land and is subject to all prior equities. There has, perhaps, been some wavering in our line of decisions upon the question as to the rights of judgment creditors, but the rule which rests on principle, and is sustained by the decided weight of authority, is thus stated in one of the latest decisions upon this question: "The interest which the lien of a judgment affects is the actual interest which the debtor has in property." *Hays* v. *Reger, supra.* In a still later case this principle is yet more emphatically declared. *Foltz* v. *Wert,* 103 Ind. 404.

This doctrine is also fully sustained by the following cases: *Boyd* v. *Anderson,* 102 Ind. 217; *Heck* v. *Fink,* 85 Ind. 6; *Sharpe* v. *Davis,* 76 Ind. 17; *Jones* v. *Rhoads,* 74 Ind. 510, see p. 513; *Troost* v. *Davis,* 31 Ind. 34, p. 37; *Glidewell* v. *Spaugh,* 26 Ind. 319; *Way* v. *Lyon,* 3 Blackf. 76.

The actual interest which Jesse Jones had in the real estate in controversy was that devised to him by his wife pursuant to the agreement made long prior to her death, and that interest is all that the judgments bind. That interest he contracted for, and, as we have shown, all that was wanting to make his contract complete and perfect at the outset, even under the statute of frauds, was the written evidence, and the place of this evidence, even had it been necessary, was supplied by the family settlement and the acts done under it. It was the evidence, and not the contract, that was originally lacking. Mr. Jones had a right, as against mere judgment creditors, to waive all questions as to the form of the evidence; this he has done, and there is no reason, in equity or justice, why his waiver should not be made effectual and he permitted to perform his oral contract.

The case before us is essentially different from one where

the husband asserts his rights under the law, repudiates the verbal contract, and demands a strict recognition of his legal rights, for, here, creditors with but a bare statutory lien, reaching no further than the actual interest of the husband, are insisting that the husband shall repudiate his oral contract with his wife, disregard her will and his promise, put aside his settlement with his children, and interpose the defence of the statute of frauds.

It is undoubtedly the law that a husband has no estate in the lands of his wife until her death that a judgment lien will affect, and as at her death Mr. Jones had, by the terms of the will, his contract, and his settlement with his children, by which he desires to abide, nothing more than a life-estate in the property specifically devised to him, that is the only interest upon which the judgment liens fasten.

The judgment of the general term was right, and is affirmed.

Filed Jan. 19, 1886.